STATE EX REL. Lorraine HUBBARD, Plaintiff-Appellant,

v.

Patrick R. HUBBARD, Defendant-Respondent.

Supreme Court

*No. 81-775. Argued January 6, 1983.—Decided February 3, 1983.*

(Also reported in 329 N.W.2d 202.)

For the appellant there were briefs by *Cletus R. Willems, Jr.,* and *Joling, Rizzo & Willems, S.C.,* and *Pamela H. Schaefer,* assistant family court commissioner, and oral argument by *Cletus R. Willems, Jr.,* and *Ms. Schaefer,* all of Kenosha.

For the respondent there were briefs by *Donald E. Mayew* and *Phillips, Richards, Lepp, Mayew, O'Connor & Kluka*, Kenosha, and oral argument by *Donald E. Mayew*.

WILLIAM G. CALLOW, J. This is an appeal from an order dismissing Lorraine Hubbard's action for child support under the Uniform Reciprocal Enforcement of Support Act [URESA]. This appeal was certified by the court of appeals and accepted by this court pursuant to sec. (Rule) 809.61, Stats.

On February 15, 1974, the Kenosha county circuit court terminated the marriage of Patrick and Lorraine Hubbard. The divorce judgment awarded custody of Michael, the couple's minor child, to Lorraine and granted visitation rights to Patrick.

On September 27, 1974, Lorraine filed a motion with the court seeking permission to move to California with Michael. Patrick opposed the motion. Before the hearing on the motion was completed, Lorraine's attorney notified Patrick's attorney that Lorraine was taking Michael away from the city for a brief period. She and the child went to California. Subsequently, on November 8, 1974, Patrick filed an order to show cause asking that Lorraine be held in contempt of court for removing Michael from the state of Wisconsin without the court's permission. He further requested that his child support payments be impounded and custody of Michael be transferred from Lorraine to him. The circuit court granted legal custody of Michael to Patrick on January 13, 1975.

Meanwhile, Lorraine instituted a separate custody action in California. The California court agreed to hear the action after Lorraine stated in a Uniform Child Custody Jurisdiction Declaration dated November 4, 1974, that:

" 'Declarant further states that she has not participated as a party or witness in any other proceeding concerning the above named minor child, that she has no information of any other custody proceeding concerning the above named minor child, and that she does not know of any party to these proceedings who has or claims custody or visitation rights concerning the above named minor child.' "

Patrick appeared personally with counsel in the California custody proceeding and objected to the jurisdiction of the court. The California court conferred with the Wisconsin court on this issue. The Kenosha county circuit court stated that it felt it had jurisdiction of the matter. Nevertheless, on September 25, 1975, the California court, finding that it had jurisdiction, entered an order awarding legal custody of Michael to Lorraine and visitation rights to Patrick. Lorraine did not request child support at that time and none was granted. Patrick did not appeal the order of the California court, but has exercised his visitation rights thereunder. Michael has resided in California with Lorraine since they moved in 1974.

On December 2, 1977, Lorraine filed a motion in the superior court of the state of California for the county of San Mateo seeking modification of the earlier child custody, visitation, and support order. Although Patrick did not make a personal appearance, he was represented by counsel in the action. In an order filed on March 8, 1978, the California court awarded Lorraine $115 monthly child support retroactive to January 1, 1978.

Lorraine subsequently brought a URESA action in Kenosha county circuit court to enforce the California support order. Patrick counterclaimed for custody and asked the court to find Lorraine in contempt for taking Michael to California without permission and for flouting orders of the Wisconsin court. The circuit court

dismissed the URESA action. The court found that Lorraine did not have legal custody of Michael and the California court never obtained jurisdiction over him; therefore, the California support order was invalid and unenforceable under the URESA. In reaching this conclusion, the circuit court expressed its concern that Lorraine's unauthorized removal of Michael to California, her 1974 California custody action, and the misrepresentations she made in initiating that action adversely affected Patrick's custody and visitation rights.

Lorraine appealed the decision of the circuit court. The court of appeals certified and we accepted this appeal.

The first question we must consider is whether the circuit court was correct in ruling that the California support order was invalid for lack of jurisdiction. There is no doubt that the California court had subject matter jurisdiction to issue a support order. The California court also had personal jurisdiction over the parties. Lorraine and Michael had resided in California for several years immediately prior to the date the support order was issued. Moreover, based on the record we must assume that Patrick submitted to the jurisdiction of the court by appearing and participating in the full support proceeding through counsel. Thus we conclude that the California court had jurisdiction to issue a valid support order.

Having determined that the foreign support order is valid, we must next consider its enforceability under the URESA. The requisites of a URESA action appear to be satisfied in the instant case. The only question presented is whether a circuit court has jurisdiction to consider matters of custody, visitation, or a custodial

parent's contempt of court as defenses or counterclaims in an action under the URESA.[1]

Child support obligations have traditionally been within the purview of the individual states and their courts. Consequently, prior to the enactment of the URESA, a state court's authority to issue and enforce support orders was subject to jurisdictional limitations. It was a costly and difficult procedure to enforce a support obligation against a parent who no longer resided within the court's jurisdiction. As a result, a recalcitrant parent could virtually avoid his or her support obligations by moving out of state.

In response to these enforcement problems, the National Conference of Commissioners on Uniform State Laws promulgated the URESA in 1950.[2] Wisconsin adopted the URESA in 1951,[3] amended it twice in 1953[4] and 1959,[5] and revised it in 1969.[6] The express purpose of

[1] For a general discussion of the viability of defenses or counterclaims relating to custody and visitation under the URESA, see Note, *Counterclaims and Defenses Under the Uniform Reciprocal Enforcement of Support Act*, 15 Ga. L. Rev. 143 (1980); Note, *Interstate Enforcement of Support Obligations Through Long Arm Statutes and URESA*, 18 J. Fam. L. 537 (1979–80); Note, *Uniform Reciprocal Enforcement of Support Act*, 20 Washburn L. J. 409 (1981).

[2] The Uniform Reciprocal Enforcement of Support Act (1950 version) is reprinted in W. Brockelbank, *Interstate Enforcement of Family Support*, 113 app. IA (F. Infausto 2d ed. 1971) [hereinafter cited as Brockelbank]. The URESA was amended in 1952 and 1958 and revised in 1968. The 1952 version is reprinted in Brockelbank, *supra* at 119 app. IB. The 1958 version is reprinted in Brockelbank, *supra* at 127 app. II. The 1968 Revised Act, which is the current version of the URESA, is reprinted in *Unif. Reciprocal Enforcement of Support Act*, 9A U.L.A. 643 (1979), and Brockelbank, *supra* at 139 app. III.

[3] Chapter 23, Laws of 1951.

[4] Chapter 247, Laws of 1953.

[5] Chapter 321, Laws of 1959.

[6] Chapter 40, Laws of 1969.

the URESA is to "improve and extend by reciprocal legislation the enforcement of duties of support." Sec. 52.10 (1), Stats.

Under the provisions of the URESA (sec. 52.10, Stats.), any person who believes he or she is owed a duty of support can institute a proceeding in a court in his or her home state (initiating state) to establish and/or enforce a support obligation against another person located in a different state (responding state). Upon finding a duty of support, the initiating court forwards the petition or support order to the responding court. The responding court then either schedules a hearing or, in the event of a foreign support order, registers the order. The local district attorney then proceeds to establish and/or enforce the support obligation in the responding court. The parent seeking enforcement of the support obligation need not appear in the responding state. Thus the URESA provides an efficient and inexpensive mechanism for enforcing support obligations against a parent who resides in another state.[7]

The very purpose of the URESA requires that it be procedurally and substantively streamlined. Interstate enforcement of support obligations will be impaired if matters of custody, visitation, or a custodial parent's contempt are considered by the responding court. The introduction of such collateral issues will burden the efficiency of the URESA mechanism. Moreover, permitting the resolution of other family matters in a URESA proceeding may deter persons from invoking the URESA. For example, a parent with legal custody of a child may forego a legitimate support claim for fear that he or she will be subjected to a counterclaim for change of custody. For these reasons, we conclude that the goals of the URESA can best be realized by making the support obligation the sole issue before the responding court.

[7] For a general discussion of the URESA, see Brockelbank, *supra; see also supra* note 1.

This court has long held that issues of custody, visitation, or a parent's contempt of court do not affect the other parent's duty of support. *Campbell v. Campbell,* 37 Wis. 206, 224 (1875); *Schade v. Schade,* 274 Wis. 519, 523–24, 80 N.W.2d 416 (1957); *Fritschler v. Fritschler,* 60 Wis. 2d 283, 291, 208 N.W.2d 336 (1973). The welfare of the child is the controlling factor in a proceeding involving support; not the conduct of the parents. *Krause v. Krause,* 58 Wis. 2d 499, 509, 206 N.W.2d 589 (1973); *Kritzik v. Kritzik,* 21 Wis. 2d 442, 448, 124 N.W.2d 581 (1963). It would be contrary to the policies underlying support to punish the child for a parent's misdeeds. Thus we have held that "support payments for a child should not be suspended because of a breach of a court order by the parent having custody. The father owes support to his child even though he is denied visitation rights or the mother is in contempt for removing the child from the state." *Fritschler v. Fritschler, supra* at 291.

In *Krause v. Krause, supra,* we applied the foregoing reasoning to facts similar to those presented in the instant case. *Krause* involved an Oneida county divorce judgment which awarded custody of the minor children to the mother and visitation rights to the father. In addition, the father was required to pay $100 per month in child support. Several years after the divorce, the mother removed the children to Florida without informing the father or obtaining the trial court's permission. Unable to locate the children, the father terminated his support payments. Subsequently, the mother initiated a URESA action in Florida against the father in Wisconsin. Disposition of the URESA action was stayed pending an action by the father in Oneida county for change of custody and termination of support. The Oneida county court ordered, among other things, that the father must pay child support.

On appeal, the father argued that he had no duty of support because the mother had defeated his visitation rights by removing the children to Florida without permission. Although the mother's misconduct could not be countenanced, we recognized that the welfare of the children was the controlling factor. Accordingly, we held:

"However, the removal by the mother of the parties' minor children from the jurisdiction of the court which entered the judgment of divorce, and the subsequent inconvenience or destruction of the father's rights of visitation, while some excuse for the nonpayment of support money payments, it is not an adequate excuse. *Campbell v. Campbell* (1875), 37 Wis. 206, 204. This court has previously held that a father's liability for the support of his minor children continues uninterrupted notwithstanding the fact that the minor children are improperly detained from the father by the mother." 58 Wis. 2d at 510.

Since a support obligation is unaffected by the misconduct of the custodial parent, matters of visitation, custody, and contempt are of no concern in a URESA proceeding. Indeed, the express language of the URESA limits the responding court's subject matter jurisdiction to support.[8] Sec. 52.10(32), Stats., provides:

[8] There is a statutory exception to this limitation on subject matter jurisdiction in a URESA action. The court may consider and adjudicate a paternity defense. Sec. 52.10(27), Stats., provides:

"**Paternity.** If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated."

"EFFECT OF PARTICIPATION IN PROCEEDING. Participation in any proceeding under this section does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding."

In addition, sec. 52.10 (23), Stats., provides:

"RULES OF EVIDENCE. In any hearing for the civil enforcement of this section the court is governed by the rules of evidence applicable in a civil court action. If the action is based on a support order issued by another court a certified copy of the order shall be received as evidence of the duty of support, subject only to any defenses available to an obligor with respect to paternity under sub. (27) or to a defendant in an action or a proceeding to enforce a foreign money judgment. *The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.*" (Emphasis supplied.)

Several states have construed these statutory provisions to deny the court jurisdiction to consider custody or visitation matters in a URESA proceeding. In *Brown v. Turnbloom,* 89 Mich. App. 162, 280 N.W.2d 473 (1979), the plaintiff initiated a URESA action in Wisconsin against the defendant who resided in Michigan. As a defense to the URESA petition, the defendant alleged that the plaintiff had not allowed him to visit the children. The precise issue presented in *Brown* was whether the trial court could take the denial of visitation rights into consideration in rendering its decision. The Michigan court of appeals held:

"URESA makes no mention of visitation matters. Its scope is expressly limited to support. The act contemplates *ex parte* proceedings where only duties of support are adjudicated. It does not provide for adversary proceedings where other matters are to be decided. There is no mechanism for requiring the custodial parent to appear to answer allegations of the noncustodial parent as to the denial of visitation privileges. Adjudication of

visitation matters is, therefore, best left to the state of divorce."

*Id.* at 168. The Michigan court cited both sections 23 and 32 of the URESA[9] as support for its conclusion. *See also: Craft v. Hertz,* 182 N.W.2d 293 (N.D. 1970).

*County of Clearwater, Minn. v. Petrash,* 198 Colo. 231, 598 P.2d 138 (1979), involved a decree which awarded custody of a divorced couple's three minor children to the father. Three years after the divorce, one of the children moved to Minnesota to live with her mother. The mother received child support assistance from Clearwater county, Minnesota. The county initiated a URESA action against the father to obtain reimbursement for past support and future support for the child. The URESA action was dismissed on the ground that the mother violated the custody decree by failing to return the child to the father. The issue before the supreme court of Colorado was whether the violation of the terms of a custody decree by a parent could be raised as a defense in an action for support under the URESA. Citing section 23 of the URESA, the Colorado court held that a parent's custody violations could not affect a child's right to support. Therefore, such violations are not proper defenses in a URESA action.

We agree with the foregoing authorities. The plain language of secs. 52.10(23) and 52.10(32), Stats. (URESA secs. 23 and 32), limits the jurisdiction of a responding court to support. Thus matters of custody, visitation, or a parent's contempt of court are not valid as defenses or counterclaims in a URESA action.

Lorraine flouted the authority of a Wisconsin court. Such conduct is deplorable. Nevertheless, her actions and their effect on Patrick's custody and visitation rights are not proper matters for consideration under the

---

[9] The corresponding Wisconsin statutes are secs. 52.10(23) and 52.10(32).

URESA. Thus we conclude that the circuit court improperly dismissed Lorraine's support action.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.