IN RE the MARRIAGE OF: Christine A. ZIMMERMAN, n/k/a Hooker, Petitioner-Respondent,

v.

John S. ZIMMERMAN, Respondent-Appellant.

Court of Appeals

*No. 91-2634. Submitted on briefs April 21, 1992.—Decided May 20, 1992.*

(Also reported in 485 N.W.2d 294.)

516

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Russell W. Devitt* of *Soffa & Devitt* of Whitewater.

<span style="color:black"></span>

On behalf of the petitioner-respondent, the cause was submitted on the brief of *John R. Dade* of *Dade & Wagner* of Whitewater.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. In this divorce action, John S. Zimmerman appeals from a postjudgment order directing that he pay child support to his former spouse, n/k/a Christine Hooker, pursuant to the child support percentage standards. John contends that the trial court erred when it imputed income to him for the value of theoretical mortgage payments on his residence even though the residence was mortgage-free. We conclude the trial court erred. We reverse and remand for further proceedings.

The historical facts are not in dispute. John and Christine were divorced on August 4, 1988. The divorce judgment awarded custody of a minor daughter to Christine and custody of two minor sons to John. The judgment also provided that neither party was required to pay support to the other. In addition, the judgment awarded the parties' residence to John and directed that he was thereafter responsible for the mortgage payments and other expenses related to the property.

Approximately two years later, on August 23, 1990, John moved for a modification of the judgment's support provisions, seeking child support from Christine. His moving papers alleged that since the divorce his income had diminished. He also alleged that due to Christine's remarriage, her financial condition had improved such that she was now able to pay child support.

At the hearing, the evidence revealed that Christine's income had increased since the divorce. The trial court relied on this evidence in concluding that John had established the requisite change in circumstances to war-

rant a modification to the judgment. *See* sec. 767.32(1), Stats. This finding is not challenged on appeal.

The evidence also established that John was no longer making mortgage payments on this property.[1] Relying on this evidence, the trial court made the following finding which lies at the heart of this appeal:

> Respondent, John S. Zimmerman, has no mortgage payment on his home and it is appropriate to attribute to the mortgage-free home a value of $500 per month or $6,000 per year which the Court adds to his earning to determine that Mr. Zimmerman has the equivalent of a $14,000 per year income.

Relying on the child support percentage standards,[2] the trial court determined that Christine was obligated

---

[1]The evidentiary record on this matter is unclear and sparse. The judgment merely approves the parties' property division stipulation, awards the residence to John and provides that he is responsible for the mortgage payments. The appellate record does not include the stipulation or a transcript of the original divorce hearing. John's financial statement is part of the appellate record. This document recites a mortgage payment of $256.

At the postjudgment hearing, the evidence established that John was no longer making mortgage payments. The appellate record, however, does not inform whether the elimination of this payment was the result of John's refinancing of the loan or a total payoff of the mortgage indebtedness without any other resulting kind of indebtedness. The evidence does establish that John obtained a loan from a private party, Dale Vetrosky, to pay off some or all of his remaining property division obligation to Christine. The record is unclear whether any of the proceeds of this loan were used to eliminate the mortgage indebtedness against the property. Nor does the record reveal the payback terms of John's obligation to Vetrosky.

[2]One of Christine's appellate arguments is that the trial court did not use the child support percentage standards. We summa-

in the amount of $1500 annually for the two sons in John's custody and that John was obligated in the amount of $2380 annually for the daughter in Christine's custody. Offsetting the two obligations, the court directed John to pay Christine $73.33 per month. John appeals.

The issue requires us to interpret the imputation of income provisions of Wis. Adm. Code sec. HSS 80 The rules governing the construction of administrative rules are the same as those applicable to statutory construction. *State v. Poly-America, Inc.,* 164 Wis. 2d 238, 243, 474 N.W.2d 770, 772 (Ct. App. 1991). The controlling facts here are undisputed. The application of a statute or administrative rule to such facts presents a question of law. *See Racine Unified School Dist. v. LIRC,* 164 Wis. 2d 567, 583, 476 N.W.2d 707, 713 (Ct. App. 1991). We review such question *de novo* without deference to the trial court's ruling. *City of Milwaukee v. Greenberg,* 163 Wis. 2d 28, 35, 471 N.W.2d 33, 35 (1991).

Christine first argues that the trial court never said that it was imputing income to John. True, but we conclude that the absence of such language does not govern this question. The court's written order recited, in part, that the court "adds to [John's] earnings" the value of the phantom mortgage payments. The practical and actual effect of the court's ruling was to create additional income for John where there was none. As such, the

rily reject this argument. The court not only stated in its bench decision that it was using the guidelines, it also expressly stated in its resulting written order that it was using the child support percentage standards to fix the respective obligations of the parties.

court imputed income to John.[3]

We now examine whether such imputation of income was proper under Wis. Adm. Code sec. **HSS 80.02**(14). This subsection provides:

> "Imputed income for child support" means the amount of income ascribed to assets which are unproductive or to which income has been diverted to avoid paying child support or from which income is necessary to maintain the child or children at the economic level they would enjoy if they were living with their parents, and which exceeds the actual earnings of the assets.

The relevant portion of the above rule for this case is that which permits the imputation of income ascribed to an asset which is unproductive.[4] Here, the residence is clearly not producing income. However, the residence constitutes a home, in the fullest sense of that word,[5] to

---

[3]Christine also argues that the effect of the trial court's ruling was merely to arrive at a correct "disposable income" figure for John. Were the court's analysis limited to this effect, we would perhaps agree with Christine's argument. However, the court did not merely observe that the absence of a mortgage left John with more disposable income. The court also concluded that the absence of such an obligation also increased John's income. It is on this latter point that we premise our disagreement with the trial court.

[4]Christine does not claim, nor does the evidence suggest, that John's use of the residence as a home for himself and the parties' two sons in his custody constitutes a diversion of income. Nor is there any argument or evidence suggesting that any imputed income relating to this asset was necessary to maintain the daughter in Christine's custody at the economic level she would enjoy if still living with her parents.

[5]**Webster's Third New International Dictionary** 1082

John and the parties' two minor sons. As such, the residence is profoundly "productive." We conclude that the trial court erroneously applied the imputation of income provisions of Wis. Adm. Code sec. **HSS 80.02**(14) to the facts of the case.

Although the foregoing discussion controls this issue, we see additional problems with the trial court's ruling. Wisconsin Administrative Code sec. **HSS 80.02**(14) contemplates that the imputed income reflect the *income producing ability* of the asset—not the amount of indebtedness against the asset. Here, the court's $500 per month figure seems to be premised on the assumption that such amount would be a representative monthly mortgage payment obligation in most circumstances.

Moreover, the trial court's $500 per month figure is not underpinned by any evidence in this record. While the court's figure may not be an unusual monthly mortgage payment, the record here shows that the former mortgage payment was $256—not $500—per month.[6]

■ We conclude with a final, but important, observation. We are *not* holding that the absence of a mortgage obligation is an irrelevant consideration to a trial court's assessment of a party's total economic circumstances. To the contrary, such information is clearly relevant and important on such a question. Rather, our holding is that the absence of such an obligation does not, *per se,*

(unabr. ed. 1976) defines "home," in part, as: "one's . . . place of residence . . . the social unit formed by a family living together . . . [a] congenial environment . . . [the] focus of [one's] domestic affection . . . [home] is where the heart is."

[6]We take this figure from John's financial disclosure form filed at the time of the divorce hearing in this case.

translate into imputed income under Wis. Adm. Code sec. **HSS 80.02**(14).

We reverse the modification order. We remand for further proceedings at which the trial court shall reexamine this question in light of a proper application of Wis. Adm. Code sec. **HSS 80.02** or any other law applicable to the modification of child support awards. The court may conduct further evidentiary proceedings on this question as it deems appropriate or necessary.[7]

*By the Court.*—Order reversed and cause remanded.

---

[7]We do not address on the merits John's further complaint that the trial court should not have awarded support to Christine because she never asked for it. We do so on two grounds. First, John's counsel's *only* response to the court's award was three words: "That's a revision." Counsel never registered any specific objection which challenged the court's authority to order a revision in favor of a nonmoving party. An objection must be made with requisite prominence so that the trial court understands the need for a ruling and has the opportunity to expound thereon. *See State v. Salter,* 118 Wis. 2d 67, 79, 346 N.W.2d 318, 324 (Ct. App. 1984). Although the trial court here responded to counsel's remark, such was understandably limited to an observation that it had the authority to order a revision as to either party. This exchange hardly constitutes the kind of trial court record we usually require and prefer for purposes of meaningful appellate review. We deem the issue waived.

Second, John points to no prejudice resulting from the trial court's grant of child support to Christine despite the lack of a formal written or oral motion by her. The hearing on John's motion appears to have fully explored the relevant economic conditions of *both* parties—an exercise which would have occurred if Christine had formally requested the court to order John to pay support. We are not to reverse unless an error has affected a substantial right of party. Section 805.18(1), Stats.