IN RE the PATERNITY OF ASHLEIGH N. H.:

STEPHEN L. N., Petitioner-Respondent,

v.

KARA L. H., Respondent-Appellant.

Court of Appeals

*No. 92–2276. Submitted on briefs March 29, 1993.—Decided July 28, 1993.*

(Also reported in 504 N.W.2d 422.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Stephen W. Hayes* of *von Briesen & Purtell, S.C.* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James H. Finn, III* of *Luck, Rosenthal & Finn* of Brookfield.

Before Nettesheim, P.J., Brown and Snyder, JJ.

SNYDER, J.   This is a paternity case where Kara L. H., the mother of Ashleigh N. H., objects to the child support order of the trial court. In particular, she argues (1) that the trial court erred in not including as income the per diems that Stephen L. N. gets as a Wisconsin legislator and by not adding back the depreciation taken by Stephen for his duplexes, and (2) that the trial court misused its discretion regarding back support. Because we conclude that the person claiming that the per diems are reimbursement for expenses must prove them to be so in each individual case and because there was no such testimony, we reverse as to that issue. We also reverse the back support award because the trial court improperly discounted the amount based on inappropriate factors.

Ashleigh was born on October 28, 1988 to Kara. Stephen, a Wisconsin legislator, was adjudicated the father on September 30, 1991. The parties stipulated to child support on a temporary basis in the amount of $535 based on Stephen's unconfirmed income until a final hearing to determine support was held. On June 16, 1992, the trial court ordered Stephen to pay $575 per month for future child support,[1] $12,000 for past support, $2046.36 for past medical expenses, and

---

[1] Pursuant to sec. 767.25(1j), Stats., and Wis. Adm. Code sec. **HSS 80.03**(1)(a), the trial court determined the monthly child support by applying the standard 17% factor to Stephen's gross income. Neither party disputes the use of this percentage standard.

$2000 toward Kara's attorney's fees. On appeal, Kara disputes the monthly child support and the amount of back support. We will discuss other relevant facts as we address each issue.

## I. GROSS INCOME

In calculating Stephen's gross income, the trial court included income earned from his employment in the Wisconsin legislature, service in the National Guard, and interest and dividend income. However, the trial court did not include per diems which Stephen received as a Wisconsin legislator to offset expenses associated with working at the state capitol. Although the per diems varied, the average monthly per diems were $907. The court also did not include any rental income earned from three duplexes owned by Stephen. The duplexes were not producing income for tax purposes because of substantial deductions taken for depreciation. Without subtracting the depreciation, however, the duplexes over the time period in question would have produced an average income of $382 per month, according to Kara.

### A.   Per Diems

Kara argues that the trial court erred in not including the $907 in per diems that Stephen received each month as part of his gross income for child support. A determination of child support is committed to the sound discretion of the trial court. *Resong v. Vier*, 157 Wis. 2d 382, 387, 459 N.W.2d 591, 593 (Ct. App. 1990). Discretion contemplates a reasoned application of the law to the facts of the case. *Id.* We will reverse a discretionary determination that misapplies the law.

471

*Matz v. Matz*, 166 Wis. 2d 326, 329, 479 N.W.2d 245, 246 (Ct. App. 1991).

Whether the trial court misapplied the law by concluding that per diems are not included in gross income and thereby not subject to child support requires us to interpret the definition of gross income under Wis. Adm. Code ch. **HSS 80**. The rules governing the construction of administrative rules are the same as those applicable to statutory construction. *Zimmerman v. Zimmerman*, 169 Wis. 2d 516, 520, 485 N.W.2d 294, 296 (Ct. App. 1992). The application of a statute or administrative rule to undisputed facts presents a question of law. *Id.* We review questions of law independently without deference to the trial court. *Id.*

Wisconsin Adm. Code sec. **HSS 80.02**(12) defines gross income as "all income as defined under 26 CFR 1.61–1 that is derived from any source and realized in any form whether money, property or services, and whether reported as total income on the payer's federal tax return or exempt from being taxed under federal law." According to 26 C.F.R. § 1.61–1, gross income includes "income realized in any form, whether in money, property, or services."

The per diems in question are intended to defray the expenses associated with serving in the state capital in Madison, away from the legislator's primary residence. *See* WISCONSIN LEGISLATIVE REFERENCE BUREAU, STATE OF WISCONSIN 1991–1992 BLUE BOOK 232 (1991). Legislators are entitled to an allowance not to exceed $73 per day for living expenses for each day in which they attend a legislative session in Madison if they have established temporary residence there. *Id.* This allowance, however, is available upon request,

and legislators need not submit a list of expenses substantiating their request.

■

Generally, where a statute is unambiguous, the plain meaning must be given to the statute. *State v. Szarkowitz*, 157 Wis. 2d 740, 748, 460 N.W.2d 819, 822 (Ct. App. 1990). Based upon the plain meaning of "gross income" as defined in Wis. Adm. Code **HSS 80.02**(12), it is clear that the per diems in question constitute gross income to the extent they are actually realized by Stephen. We recognize that legislators do incur legitimate expenses while living in Madison, and therefore do not realize the entire amount of the per diems as income. We also recognize that the per diems are variable, fluctuating with the actual time that the legislator is in Madison on legislative business. Therefore, we conclude that the amount of the per diems that constitutes gross income subject to child support is the per diems less the amount attributable to reimbursement for expenses.

Stephen argues that none of the per diems are actually realized as income because his expenses equal the amount of per diem claimed, thereby offsetting any net income. We disagree. Since legislators are not required to justify per diem requests by submitting an itemized list of expenses, the per diem cannot be considered strictly as reimbursement for necessary expenses. The $73 per day allowance established by the legislature represents only an estimate of daily expenses associated with living in Madison. Whether intentional or unintentional, it is not difficult to imagine instances where the per diem requested is greater than the legislator's actual expenses, resulting in income realized by the legislator.

Stephen also argues that none of the per diems should be included in gross income because, according to the Internal Revenue Code and treasury regulations, per diems are nontaxable if they do not exceed substantiated expenses. Stephen points to the fact that he only applied for $55 per day, instead of the maximum $73, as evidence that the per diems received were not greater than his expenses.

The argument that the per diems may be nontaxable ignores the plain language of Wis. Adm. Code sec. **HSS 80.02**(12), which clearly states that money realized constitutes gross income regardless of its tax status. Also, while it is undisputed that Stephen requested less than the maximum allowance, it does not follow that his actual expenses equaled the amount requested. Depending on a variety of lifestyle factors, the $55 per diem that Stephen requested may still result in a realization of income.

Kara argues that the entire per diems, $907 per month, should be considered money realized as gross income for child support purposes. This argument must also fail because it erroneously assumes that the entire per diems are realized by Stephen as income and ignores the fact that legislators do incur legitimate expenses while living in Madison.

Therefore, while we conclude that per diems must be considered gross income subject to child support to the extent they are actually realized, legitimate expenses which per diems are designed to compensate and which are substantiated by the obligor during the support hearing decrease the amount of income realized and therefore must be excluded. In other words, any income realized by Stephen from the per diems, meaning any per diems greater than his actual expenses substantiated at the child support hearing,

must be considered gross income subject to child support under Wis. Adm. Code ch. **HSS 80**.

Accordingly, we conclude that the trial court misapplied the law and therefore failed to properly exercise its discretion. Because no testimony or evidence was introduced during the support hearing regarding Stephen's expenses associated with living in Madison, we reverse and remand for a hearing on this issue.

## B. Rental Income

Kara also argues that income from three duplexes owned by Stephen should have been included in Stephen's gross income. She claims that the trial court erred by not adding back the depreciation taken for the duplexes, which would result in an additional income to Stephen of $382 per month. She asserts that *In re A.S.D.*, 125 Wis. 2d 529, 535, 372 N.W.2d 921, 923 (Ct. App. 1985), where the court added back the depreciation of rental property in order to determine the father's gross income, controls the outcome in this case. We disagree.

*A.S.D.* stands for the proposition that the decision whether to add back depreciation when calculating income received from a rental unit is within the discretion of the trial court and will not be disturbed if there is a reasonable basis for the determination. *Id.* Given the particular facts and circumstances in *A.S.D.*, the court deemed it appropriate to add back the depreciation. However, contrary to Kara's assertion, the court did not rule that adding back depreciation was appropriate or mandatory in every case.

In the present case, the trial court decided not to add back the depreciation when calculating Stephen's income, stating:

> I have not included [income from the duplexes], because again that is a variable. The matter of depreciation is one consideration. There are always extraordinary expenses in operating these duplexes, and one year there could be profit . . . and the next year there could be a deficit . . . and to apply a percentage figure to something that could be as variable as that I think is inappropriate.

The trial court considered the evidence and set forth reasons for its ruling. We conclude from these comments that the court properly exercised its discretion, which we will not disturb since there is a reasonable basis for the determination. *See id.*

## II. BACK SUPPORT

Stephen paid virtually no support until the time he was adjudicated the father.[2] The court determined that back support was appropriate and applied the guideline percentage to Stephen's gross income retroactively in reaching a figure of $13,464.[3] The trial court then ordered back support in the amount of $12,000. The court reasoned that a reduction was appropriate given that Stephen initiated the paternity petition despite

---

[2] Stephen testified that he contributed a nominal amount toward hospital expenses and child care and argues that he paid some costs of supporting the child directly to Kara.

[3] *See generally* Wis. Adm. Code ch. **HSS 80**. In reaching this figure, the trial court applied the 17% factor to Stephen's gross income for the years 1988, 1989 and 1990, and used the parties' stipulated monthly support payment of $535 in 1991.

the substantial economic burden and "in view of the lack of contact between [Stephen] and the child for a period of two and a half years."

Kara argues that the court misused its discretion when it "discounted" the back support on the basis of the alleged lack of contact and the fact that Stephen initiated the paternity. She argues that the record does not indicate a lack of visitation between Stephen and the child, and that any lack of visitation was not the result of her conduct. In any event, she argues that the conduct of the parents is not to be used to defeat support for the child. *See State ex rel. Hubbard v. Hubbard*, 110 Wis. 2d 683, 689, 329 N.W.2d 202, 205 (1983).

An award of child support is within the discretion of the trial court. *Matz*, 166 Wis. 2d at 329, 479 N.W.2d at 246. We will reverse a discretionary determination that misapplies the law. *Id.* In this case, we must determine whether the trial court is bound by sec. 767.51 (4m), Stats., when addressing past support. The application of a statute to a set of facts is a question of law which we review *de novo. In re J.M.K.*, 160 Wis. 2d 429, 433, 465 N.W.2d 833, 835 (Ct. App. 1991). We must give effect to the legislative intent by first looking to the language of the statute itself. *Id.*

Prior to 1987, a father's liability for past support of the child in a paternity case was statutorily limited to support for the period after the commencement of the paternity action. *See* sec. 767.51(4), Stats. (1985–86). In 1987, sec. 767.51(4) was amended to extend the father's liability for past support for the period after the birth of the child.[4] Section 767.51(4m) requires the

---

[4] 1987 Wis. Act 27, sec. 2137y, eff. Oct. 1, 1987.

477

court to determine child support payments in a paternity case by using the percentage standard established by Wis. Adm. Code sec. **HSS 80.03** under the authority granted by sec. 46.25(9)(a), Stats., or the various factors in sec. 767.51(5).[5] The fact that the legislature did not distinguish between past and future support in sec. 767.51(4m) at the time it extended child support liability to the date of birth indicates an intent that the methodology in sec. 767.51(4m) and (5) applies to all

[5] Section 767.51, Stats., states in relevant part:

**(4m)** Except as provided in sub. (5), the court shall determine child support payments by using the percentage standard established by the department of health and social services under s. 46.25(9)(a).

**(5)** Upon request by a party, the court may modify the amount of child support payments determined under sub. (4m) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to the requesting party:

(a)   The needs of the child.

(am)   The physical, mental and emotional needs of the child, including any costs for health insurance. . . .

(b)   The standard of living and circumstances of the parents. . . .

(c)   The relative financial means of the parents.

(d)   The earning capacity of each parent. . . .

(e)   The need and capacity of the child for education, including higher education.

(f)   The age of the child.

(g)   The financial resources and the earning ability of the child.

(gm)   Any physical custody arrangement ordered or decided upon.

(gp)   Extraordinary travel expenses incurred in exercising the right to periods of physical placement.

(h)   The responsibility of the parents for the support of others.

(i)   The value of services contributed by the custodial parent.

(im)   The best interests of the child.

(j)   Any other factors which the court in each case determines relevant to the best interests of the child.

support determinations, whether past, present or future.

Therefore, we conclude that the trial court is bound by sec. 767.51(4m), Stats., when determining back support as well as future support. However, the determination of back support in a paternity case, like the determination of child support in general, is committed to the discretion of the trial court. The court may modify the amount of back support, upon considering the factors in sec. 767.51(5), if it determines that use of the percentage standard is unfair.

In this case, the trial court properly applied the percentage guidelines retroactively to Stephen's past gross income beginning at the time of Ashleigh's birth in order to calculate an appropriate amount for back support. However, the trial court then reduced this figure based on Stephen's lack of contact with the child and his willingness to initiate the paternity proceedings. Neither of these factors is enumerated in sec. 767.51(5), Stats., as being appropriate to justify a modification.

We have long held that issues of custody, visitation or a parent's contempt of court do not affect the other parent's duty of support. *Hubbard*, 110 Wis. 2d at 689, 329 N.W.2d at 205. The welfare of the child is the controlling factor in a proceeding involving support, not the conduct of the parents. *Id.* Also, although we agree with the trial court that encouraging fathers to come forward voluntarily and accept parental responsibility by initiating paternity proceedings is good public policy, the legislature has not deemed that such action warrants a financial discount when determining child support.

Because the trial court discounted the award for back support based on inappropriate factors, we conclude that the court misapplied the law and therefore misused its discretion. Accordingly, we reverse the back support award and remand for further consideration consistent with sec. 767.51(4m) and (5), Stats.

*By the Court.*—Order reversed and cause remanded with directions.