In the MATTER OF CHILD SUPPORT ARREARAGES
In RE the MARRIAGE OF: Timothy SULLIVAN v.
Aurora BAUTZ:

STATE of Wisconsin, Appellant,

v.

Timothy SULLIVAN, Respondent.

Court of Appeals

*No. 2006AP90. Submitted on briefs September 21, 2006.
—Decided October 25, 2006.*

2006 WI App 238

(Also reported in 724 N.W.2d 908.)

On behalf of the appellant, the cause was submitted on the briefs of *Rhonda K. Gorden*, assistant corporation counsel of Ozaukee.

On behalf of the respondent, the cause was submitted on the brief of *R. Douglas Stansbury* of *Levy & Levy, S.C.* of Cedarburg.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. This is the State's appeal from an order reducing Timothy Sullivan's child support arrearages. The State claims that the court should not have reduced the income figure used to calculate support by excluding the value of benefits Sullivan received from his employer when he was working in Milwaukee while living, at least nominally, in Minnesota. We agree that

the circuit court misapplied the law in excluding all of these benefits, rather than excluding only those that were business expenses necessary to generate income. We therefore reverse and remand so that the circuit court may make the necessary determinations.

¶ 2. Sullivan and Aurora Bautz were divorced in 1989, and Sullivan's child support was set at 17% of his income. In 2002, the State brought a motion to set arrearages for Sullivan, alleging that he had paid less than the required 17% for the years 1997–2002, and that he now owed $27,782.54. The State's figures for Sullivan's income were obtained from the Social Security Administration since Sullivan had not filed a tax return for any of the relevant years. The court ordered the arrearages set at the State's requested amount temporarily but left the matter open for further proceedings.

¶ 3. The court held another hearing on the arrearage amount in February 2003. At this hearing, Sullivan testified and submitted documents showing that, in addition to his regular wages, his employer had provided him with other benefits from 1998 to 2001.[1] These included an apartment in Milwaukee (where Sullivan worked), phone service, cable television, and cleaning for the apartment, travel expenses for trips to and from Minnesota and within Milwaukee, a leased vehicle, and a $25 per diem allowance for other expenses. Recognizing that the IRS would view all of these expenditures as additional income to Sullivan, the employer also gave Sullivan money to pay the addi-

---

[1] Apparently some of these goods were directly provided and paid for by the employer while others were paid for by Sullivan and reimbursed. There is no difference between these methods of compensation as far as our analysis is concerned.

tional taxes. This money was referred to as a "tax gross-up," and was paid at a rate of 77% of the underlying expenditure.

¶ 4. Sullivan's employer provided this compensation because it regarded Minnesota as Sullivan's "home" during this period. Sullivan testified to his employer's policy that in order to receive all of this extra compensation, he had to maintain a residence in Minnesota. Since Sullivan spent most of his time, including some weekends, in Milwaukee, and was seldom actually in Minnesota, he was able to make an arrangement in Minnesota with a coworker's friend whereby he paid a varying amount of rent for a space in the friend's home. He testified that he paid as much as $400 per month for the space, but that near the end of this arrangement, he was paying between $150 and $200 per month. Sullivan testified that he would spend some weekends in Milwaukee in order to exercise visitation time with his daughter, who lived there. In 2001, when Sullivan was to be transferred from the project that had kept him in Milwaukee, he requested and received a transfer to the Milwaukee office in order to remain near his daughter and removed his possessions from the home in Minnesota. At this point, his employer ceased to provide him with the extra benefits.

¶ 5. Sullivan argued that all of the nonwage benefits (referred to by both parties as "compensatory income") that he received from his employer should be excluded from his income for the purpose of calculating child support. He argued, for example, that the apartment provided by his employer made it possible for him to work in Milwaukee when his home was in Minnesota, and it was therefore an expense necessary to generate income. The court refused to modify Sullivan's arrearage based upon the evidence that Sullivan had pre-

sented, but again left open the possibility of doing so once he presented more evidence.

¶ 6. Another hearing was held more than two and one-half years later, in October 2005. The sole witness at this hearing was an accountant hired by Sullivan who prepared his tax returns for the years in question. The accountant also prepared a schedule separating out Sullivan's wage income from his compensatory income (including the per diem) and accounting for the fact that Sullivan's "tax gross-up" payments had been higher than the taxes Sullivan actually paid on the underlying benefits. The accountant testified as an expert and opined that only Sullivan's wages and the excess tax gross-up were "real income" to Sullivan.[2] This was because the other benefits were in reimbursement for Sullivan's extra expenses associated with working away from home, and were not "discretionary income" to him.

¶ 7. A final hearing was held in November 2005. At this hearing, the court heard argument from the State and Sullivan and then announced its decision:

> Some of the expenses don't perhaps have—are subject to being questioned. But the long and the short of it is this is an unusual situation. This isn't the run-of-the-mill case. I mean when I first heard this years ago I questioned the legitimacy of those reimbursements to begin with because it seemed to me they were simply being made to support and reimburse ordinary living expenses. But there was an audit that was done by an expert. He opines as to what his incomes are for those years.

. . . .

---

[2] "Real income" was apparently not used as an accounting term of art; the accountant stated that he used it "for lack of a better term."

435

> Okay. I understand you disagree with it, but I am going to find that his income . . . was actually [the "real income" numbers supplied by the accountant]. Those are the numbers that the expert came up with when he did an audit and recalculated what his actual income was, including adding back the excess taxes that were paid by his employer that he didn't actually have an obligation to pay. Under the circumstances here, this is the best I can do. And I will make that finding . . . .
>
> . . . .
>
> I have made the finding. And you know, certainly it's subject to dispute. They can certainly appeal this. And they may well want to, because it's a very odd situation. But nonetheless, those are the findings that I am making.

The State appeals the reduction of Sullivan's child support income for the years 1998–2001.

¶ 8. The determination of child support is within the sound discretion of the trial court. *Resong v. Vier*, 157 Wis. 2d 382, 387, 459 N.W.2d 591 (Ct. App. 1990). Discretion contemplates a reasoned application of the law to the facts of the case. *Id.* The exercise of discretion must be based on the facts in the record or reasonably derived from it. *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977). Failure to apply the correct law is an erroneous exercise of discretion. *See Resong*, 157 Wis. 2d at 387.

¶ 9. The interpretation of provisions of the administrative code presents a question of law which we review de novo. *Zimmerman v. Zimmerman*, 169 Wis. 2d 516, 520, 485 N.W.2d 294 (Ct. App. 1992). The rules for construction of the administrative code are the

same as the rules for statutory construction. *Id.* Where a code provision is unambiguous, we must generally give it its plain meaning. *See State v. Bucheger,* 149 Wis. 2d 502, 507, 440 N.W.2d 366 (Ct. App. 1989).

¶ 10. At all times relevant to this case, Wis. Stat. § 767.25(1j) directed the courts to establish child support by using the income percentage standards contained in the administrative code. *See, e.g.,* § 767.25(1j) (1989–90). During the support years here at issue, the code defined income as, inter alia, "[a]ll income considered federal gross income under 26 CFR 1.61–1," and "[a]ll other income, whether taxable or not." Wis. Admin. Code § DWD 40.02(13)(a) and (i).[3] The federal tax code at 26 CFR § 1.61–1 (1998), in turn, defined gross income as including "income realized in any form, whether in money, property, or services."

¶ 11. However, the child support code also allowed a court to "reduc[e] gross income by the business expenses which the court determines are reasonably necessary for the production of that income . . . and which may differ from the determination of allowable business expenses for tax purposes." Wis. Admin. Code §§ DWD 40.03(02) and 40.02(14)[4].

¶ 12. The parties agree that all of the benefits conferred on Sullivan by his employer, whether paid in

---

[3] These percentage standards, along with the directions for calculating income subject to them, were originally located in Wis. Admin. Code ch. HSS 80, but were moved in 1999 to Wis. Admin. Code ch. DWD 40. CR 98–130, Register July 1999, No. 523, eff. 8–01–99. All references to the Wisconsin Administrative Code are to the August 1999 version unless otherwise noted.

[4] Wisconsin Admin. Code § DWD 40.02(14) has since been amended and renumbered § DWD 40.02(16). CR 03–022, Register December 2003, No. 576, eff. 1-1-04.

cash or in kind, were gross income to him under WIS. ADMIN. CODE § DWD 40.02(13). The dispute between the parties centers instead on whether §§ DWD 40.02(14) and 40.03(2) exempt some or all of this income from the child support calculation because it was spent on business expenses.

¶ 13. The State contends that the circuit court failed to apply WIS. ADMIN. CODE §§ DWD 40.02(14) and 40.03(2) correctly because it excluded Sullivan's expenses even though he made no showing that they were reasonably necessary to generate income.[5] The State further argues that the circuit court erroneously exercised its discretion by failing to state its reasoning process and relying solely on the opinion of Sullivan's accountant. The State does not take the position that all of Sullivan's compensatory income should be included in the support calculation, though it notes that Sullivan's "home" in Minnesota was "more like a weekend getaway destination than an actual residence," and an argument could therefore be made that Sullivan's

---

[5] Sullivan does not dispute that he had the burden of proof to make this showing. Though there is no case explicitly addressing the burden of proof under the WIS. ADMIN. CODE ch. DWD 40 business expense provision, we agree that the burden lies with the party claiming the expense. *See Stephen L.N. v. Kara L.H.*, 178 Wis. 2d 466, 474–75, 504 N.W.2d 422 (Ct. App. 1993) (requiring payor to substantiate that per diems were used for legitimate expenses under "gross income" definition in WIS. ADMIN. CODE § HHS 80.02(12)); *see Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 295–96, 544 N.W.2d 561 (1996) (noting burden of proof on party seeking deviation from child support percentage standards in statute); *see also Szymczak v. Terrace at St. Francis*, 2006 WI App 3, ¶ 24, 289 Wis. 2d 110, 709 N.W.2d 103 ("[A]ccording to a tenet of law, the party who asserts the affirmative of a proposition has the burden of proof.") (citation omitted).

Milwaukee expenditures were simply ordinary living costs and not business expenses. Rather, the State advocates a "loose" reading of the code that would allow Sullivan to deduct those expenses that were necessary in order to comply with his employer's policy and allow him to receive all of the benefits associated with working away from "home." Thus, in the State's view, his travel expenses to and from Minnesota would be deductible since they were necessary to show his employer that he was living there.

¶ 14. Sullivan responds that he introduced ample documentation of his expenditures and presented expert testimony that the compensatory income was not "real income" and that the circuit court therefore acted within its discretion in excluding it.

¶ 15. We agree with the State. The hearing transcript shows that the circuit court based its decision on the testimony of Sullivan's accountant. The record and the transcript of that testimony reveal, however, that neither the accountant's testimony nor Sullivan's documentation tends to show what the code required Sullivan to show. Both serve to distinguish the compensatory income from Sullivan's wages, but neither demonstrates that the compensatory income was used for business expenses reasonably necessary to generate income, as the plain meaning of the code requires. The facts presented to the circuit court thus do not provide a reasonable basis for its decision, and the decision is therefore an erroneous exercise of discretion. *See Howard*, 81 Wis. 2d at 305. Further, some of Sullivan's claimed "expenses," such as cable television, personal telephone service, and apartment cleaning are obviously unrelated to generating income, and clearly should not be excluded.

439

¶ 16. At the beginning of the proceedings in this case, the court had only Sullivan's total income figure,[6] which included both his wages and his compensatory income, and had no way of distinguishing one from the other. The documents demonstrated for each two-week period the amount of compensatory income and what it was spent on (with the exception of the per diem, for which the records show only the amount).

¶ 17. Sullivan's accountant used the figures in the documents to come up with total yearly figures for wage and compensatory income and to determine what portion of the tax gross-up was in excess of Sullivan's taxes paid. That is, the accountant used his expertise to clearly separate wage income from nonwage income. Again, however, the accountant could have offered no evidence that the nonwage income went toward expenses necessary to the production of other income. That was Sullivan's burden to show and he could not show it by the accountant's testimony.

¶ 18. What the accountant did do was describe only the wage income and excess tax gross-up as "real income." Sullivan contends that the court adopted this finding and that it was entitled to do so, since the State offered no contrary evidence. Courts, however, are not rubber stamps for expert testimony. *State v. Brown*, 2005 WI 29, ¶ 88, 279 Wis. 2d 102, 693 N.W.2d 715. It is clear from the record that the accountant's use of the

---

[6] These original figures reported by the Social Security Administration and relied upon by the State in pursuing support arrearages are lower than those reported on Sullivan's W-2s because they are based on that part of Sullivan's income subject to the social security tax. The social security withholding cap is of course irrelevant to Sullivan's income for child support purposes, and Sullivan's accountant correctly used the higher W-2 figures for his calculations.

term "real income" is simply a restatement of a fact accepted by all parties: some of Sullivan's income was in wages and some was not. "Real income" is the accountant's name for Sullivan's total income minus his compensatory income. But the issue in this case is *whether the compensatory income was excludable.* The accountant simply gave the figure that would result if it *was* excludable and did not address the main issue: whether it was expended to produce other income, as WIS. ADMIN. CODE ch. DWD 40 requires. The State was not required, as Sullivan suggests, to bring forth evidence to contradict the accountant, since the accountant gave no testimony on the issue at the center of this case: whether Sullivan's expenditures in Milwaukee were reasonably necessary to produce other income.[7]

[7] The accountant did opine that Sullivan's nonwage income was for expenses that he would not have incurred had he not been away from home. However, this opinion appears to be based only on the fact that the income was nonwage. The accountant did not provide any other justification for his opinion. Further, on the facts of this case, no specialized or technical knowledge was necessary to determine whether Sullivan's expenditures were for the production of income. *See Burnett v. Alt,* 224 Wis. 2d 72, 83, 589 N.W.2d 21 (1999) (A question asks for expert testimony if it requires scientific, technical, or other specialized knowledge.). As the State points out, the accountant is an expert in accounting practices, not on the applicability of WIS. ADMIN. CODE ch. DWD 40 to the facts of this case.

The accountant also testified that the compensatory income was not "discretionary," which may be true, but is irrelevant. Discretionary income is defined as "income that is not allocated for necessary items such as food and shelter." THE AMERICAN HERITAGE DICTIONARY 517 (4th ed. 2000). By this definition, the rent for Sullivan's apartment would not be discretionary. One could also take "discretionary" to mean that Sullivan could not

Rather, it was Sullivan's burden to give the circuit court some reason to think that the benefits provided by his employer were not what they appeared to be: a very generous allowance to cover the ordinary living expenses that he would have incurred no matter where he lived.

¶ 19. We therefore agree with the State that the circuit court misapplied WIS. ADMIN. CODE ch. DWD 40 by excluding income from the child support calculation when there was no showing that it was an expense reasonably necessary to generate income. It appears that the court simply accepted the expert's opinion on Sullivan's "real income" as definitive. As we have discussed, while helpful in separating out the compensatory income, wage income, and excess tax gross-up, the accountant's testimony simply did not adequately address the question of business expenses. We remand to the circuit court with directions to determine what part of Sullivan's compensatory income was spent to generate other income. The burden of proof on the matter remains with Sullivan. We provide the following guidance based upon the record before us.

¶ 20. Sullivan, of course, would like to exclude all of the compensatory income, on the theory that he needed to be in Milwaukee to earn his wage, and all of the benefits provided by his employer were for the things that he needed to live away from home. However, even if one accepts that Sullivan "lived" in Minnesota when he was paying minimal rent for space in a house

spend the income as he chose, since it was provided in kind, rather than in money (except for the per diem). Regardless of the definition used, that income is not discretionary does not mean that it is spent to generate other income, which is what is required to make it a business expense exempt under WIS. ADMIN. CODE §§ DWD 40.02(14) and 40.03(2).

and spending very little time there,[8] this does not entitle him to deduct his entire lifestyle. His employer quite generously provided him with cable television, personal telephone service, and a cleaning service. All of these are benefits to Sullivan and, as such, are gross income. None of them can reasonably be said to be necessary to the production of income. They therefore should not be excluded from the child support calculation.

¶ 21. With respect to the $25 per diem, we hold that *Stephen L.N. v. Kara L.H.*, 178 Wis. 2d 466, 474–75, 504 N.W.2d 422 (Ct. App. 1993), governs. That case involved a state legislator who claimed that his per diem should be excluded from child support calcula-

---

[8] Indeed, it might be more reasonable, as the circuit court at one point noted, to allow Sullivan to deduct the minimal rent that he paid in Minnesota, rather than the rent for his Milwaukee apartment, since it was the maintenance of a "home" in Minnesota that allowed him to receive all of the benefits he did in Milwaukee, per his employer's policy. It could thus be seen as an expense "reasonably necessary to the production of income," while Sullivan's Milwaukee apartment was his true home, and its rent a personal expense that Sullivan would have incurred no matter where he lived. On the other hand, Sullivan testified that he had no choice in where he lived in Milwaukee, since his employer housed all of its employees in two locations. The State concedes that it may be unfair to charge him with the full amount of his Milwaukee rent when he might otherwise have found a more economical living space. We will leave it to the circuit court to strike an equitable balance on this issue.

We also leave to the circuit court the treatment of Sullivan's trip allowances and the leased vehicle. Sullivan testified that only a coworker used the vehicle while Sullivan used his own car; if this is so, then Sullivan did not "realize" the income associated with the use of the car under 26 CFR § 1.61–1.

443

tions. *Id.* at 470, 473. Though the version of the administrative code then in effect[9] had no business expense exclusion, we held that the portion of the per diems used for legitimate expenses while living in Madison was not "realized" by the legislator. *Id.* at 473. We required, however, that the payor substantiate the expenses that he wished to exclude and remanded for a hearing on the issue. *Id.* at 474–75. We rejected the legislator's argument that because he claimed a smaller per diem than the maximum, it was an accurate reflection of his actual expenses. *Id.* at 474. Following *Stephen L.N.*, we direct that on remand, Sullivan be allowed to exclude only that portion of his per diem that he can substantiate was used for expenses incurred because he was living away from his home or for other legitimate business reasons.[10]

██

¶ 22. The last item of compensatory income that the circuit court must consider on remand is the portion of the tax gross-up which is not in excess of Sullivan's actual marginal tax increase (since the portion in excess of those extra taxes has already been included in Sullivan's income). It stands to reason that the gross-up payments related to income found not to be business expenses are also not business expenses, since income taxes are generally not deductible from income for child support. Gross-ups that Sullivan used to pay taxes incurred on his legitimate business expenses, however,

---

[9] WIS. ADMIN. CODE ch. HSS 80 (Aug. 1987).

[10] Sullivan argues that *Stephen L.N.* does not apply because the calculations performed by his accountant do not include the per diems as part of his "real income." We have already rejected the notion that the accountant's testimony about Sullivan's "real income" bears at all on the question of whether the income is excludable as a business expense.

are also business expenses, since they serve, albeit indirectly, to pay expenses necessary for the generation of income.

*By the Court.*—Order reversed and cause remanded with directions.