Stephen V. HANNIGAN, Plaintiff-Appellant,

v.

SUNDBY PHARMACY, INC., Defendant-Respondent.

Court of Appeals

*No. 98–1673. Submitted on briefs November 30, 1998.—Decided February 25, 1999.*

(Also reported in 593 N.W.2d 52.)

*See Callaghan's Wisconsin Digest, same topic and section number.

912

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Stephen V. Hannigan*, pro se.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Moore* and *Bruce F. Anders* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J. Stephen Hannigan appeals an order granting summary judgment which dismissed his suit against Sundby Pharmacy. Hannigan alleges that Sundby Pharmacy violated § 146.83, STATS., by failing to provide him with a statement paraphrasing his rights to access his medical records and by failing to maintain proper information regarding requests for his medical records. Section 146.84(1)(b), STATS., provides for damages when such violations are committed "in a manner that is knowing and wilful." The trial court granted summary judgment for Sundby Pharmacy on the grounds that the violations were not knowing and wilful because pharmacist Fred Sundby was unaware of the requirements of § 146.83, STATS. We conclude, however, that "ignorance of the law" is not a defense to an action for damages under § 146.84(1)(b), STATS. We also conclude that factual disputes remain as to whether Sundby Pharmacy's violations were commit-

ted "in a manner that is knowing and wilful" under § 146.84(1)(b). Accordingly, we reverse the order granting summary judgment and remand for further proceedings in the trial court.

## BACKGROUND

The following facts are undisputed. This case stems from a previous personal injury lawsuit initiated by Hannigan against his former employer. In connection with the personal injury action, Hannigan authorized the disclosure of certain of his medical records to his employer's attorneys. The employer's attorneys also sought copies of Hannigan's prescription records from Sundby Pharmacy, which Sundby Pharmacy provided. Hannigan contends, however, that he did not authorize the disclosure of his Sundby Pharmacy records, and that his employer's attorneys secured the release of the Sundby Pharmacy records under false pretenses. Hannigan then sought information from Sundby Pharmacy regarding the release of his prescription records, presumably in order to document his allegations against his employer's attorneys. Sundby Pharmacy did not provide Hannigan with the information he requested, thus giving rise to the present case.

On November 12, 1996, Hannigan went to Sundby Pharmacy, showed pharmacist Fred Sundby a "medical release," and asked to see "the releases that had been used to access Hannigan's medical records in the possession of Sundby." Sundby told Hannigan that he could not fulfill the request because the pharmacy did not have any information other than "the actual prescription profile(s) themselves."

On November 26, 1996, Hannigan mailed a written request to Sundby Pharmacy, requesting

the names of the persons or agencies to which my medical records were released, the dates of such releases, identification of those records released and copies of those Medical Information Release forms with their accompanying cover letters indicating what records were requested.

In response to this request, Sundby Pharmacy sent Hannigan a copy of his prescription records, but did not include any information regarding prior releases of Hannigan's records. Sundby Pharmacy now admits that it did not retain information regarding the release of Hannigan's medical records to his former employer's attorneys.[1] Sundby Pharmacy also admits that it did not provide Hannigan with a statement paraphrasing his rights to access his medical records, as required by § 146.83(2), STATS.

Hannigan filed a small claims action alleging that Sundby Pharmacy had violated §§ 146.81, .82, .83 and .84, STATS., by failing to "maintain a record of who med. records were released to; date & time of release & what records were released—no written med. informed release 'if' received were [kept]." Both parties moved for summary judgment. The trial court granted summary judgment to Sundby Pharmacy, after it determined that Fred Sundby was unaware of the requirements of ch. 146, STATS. Accordingly, the court concluded that any violation of ch. 146 could not have been knowing and wilful, as required by § 146.84(1)(b),

---

[1] According to Hannigan, he also requested, on January 17, 1997, information regarding the release of his medical records. Sundby Pharmacy disputes that Hannigan made a request on that date. This dispute is not material to the issue on appeal.

STATS.[2] Hannigan appeals the trial court's summary judgment dismissing his complaint.

## ANALYSIS

Our review of the trial court's grant of summary judgment is de novo, and we use the same methodology as the trial court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). That methodology is well known, and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 496–97, 536 N.W.2d at 182; *see also* § 802.08(2), STATS. In reviewing a summary judgment, we are, like the trial court, limited to consideration of the pleadings and evidentiary facts submitted in support of and in opposition to the motions. *See Super Valu Stores, Inc. v.*

[2] The trial court articulated the grounds for its decision as follows:

> We also have to determine whether or not Mr. Sundby, while acting as an agent of the corporation, even knew of the requirements of Chapter 146, and then again, the plaintiff has not come forth with any evidence whatsoever to establish that knowledge, and by the affidavit set forth by Mr. Sundby, he has stated that he did not know about the requirements of Chapter 146, and since the plaintiff has not presented any facts to raise a material issue as to that significant fact, then I am left with the only conclusion that Mr. Sundby was not aware of the limitations of Chapter 146. And so it is on that basis—on those two bases that I determine that Mr. Sundby, while acting as an agent of the corporation, did not know that he was violating Chapter 146 when he disposed of those medical releases.
>
> The next question for the Court to answer is did he willfully violate Chapter 146. Well, it necessarily follows that if he didn't know what he was doing, then obviously, he couldn't act with intent, and so the Court finds specifically that Mr. Sundby did not willfully violate Chapter 146.

*D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 573, 431 N.W.2d 721, 724 (Ct. App. 1988).

The gravamen of Hannigan's complaint, construing it liberally as we must, is that Sundby Pharmacy violated § 146.83, STATS., by failing to inform him of his rights to access his health care records maintained by Sundby Pharmacy, as required by § 146.83(2), and by failing to maintain records of requests for access to his health care records as required by § 146.83(3).[3] Hannigan sought damages for the violations pursuant to § 146.84(1)(b), STATS., which provides:

> Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 *in a manner that is knowing and wilful* shall be liable to any person injured as a result of the violation for actual damages to that person; exemplary damages of $1,000 in an action under this paragraph.

(Emphasis added.) Hannigan's complaint sought $5,000 in damages, although no itemization of the amount claimed is provided in the complaint or in Han-

---

[3] Section 146.83(2) and (3), STATS., provide as follows:

(2) The health care provider shall provide each patient with a statement paraphrasing the provisions of this section either upon admission to an inpatient health care facility, as defined in s. 50.135 (1), or upon the first provision of services by the health care provider.

(3) The health care provider shall note the time and date of each request by a patient or person authorized by the patient to inspect the patient's health care records, the name of the inspecting person, the time and date of inspection and identify the records released for inspection.

We note that Hannigan does *not* claim, either in his complaint or on this appeal, that the pharmacy wrongfully released his records to any person, or that it denied him access to his own records. *See* §§ 146.82 and .83(1), STATS.

nigan's submissions on the motions for summary judgment.

It is undisputed that Sundby Pharmacy violated § 146.83(2) and (3), STATS. We base this conclusion on the pharmacy's responses to Hannigan's requests for admission, which include the following:

REQUEST NO. 5: The Sundby Pharmacy, Inc. . . . failed to comply with § 146.83(2) Wis. Stats. by providing Mr. Hannigan the statement required under that statute.

RESPONSE TO REQUEST NO. 5: Admits that Sundby Pharmacy did not provide Stephen Hannigan with a statement paraphrasing the provisions of Wis. Stat. § 146.83(2).

. . . .

REQUEST NO. 10: The Sundby Pharmacy, Inc. . . . received by mail a cover letter and Medical Information Release from Stephen V. Hannigan dated November 26, 1996.

RESPONSE TO REQUEST NO. 10: Admits that Sundby Pharmacy Inc. received a letter in the mail from Stephen Hannigan.

REQUEST NO. 11: In the letter . . . Mr. Hannigan wrote:

I am requesting the names of the persons or agencies to which my medical records were released, the dates of such releases, identification of those records released and copies of those Medical Information Release forms with their accompanying cover letters indicating what records were requested.

RESPONSE TO REQUEST NO. 11: Admits.

. . . .

REQUEST NO. 17: In response to Mr. Hannigan's correspondence of November 26, 1996, neither Sundby Pharmacy nor any person working for Sundby Pharmacy provided Mr. Hannigan:

918

17.1 a listing of the names of the persons or agencies to which Mr. Hannigan's medical records had been released, and the dates of such releases;

17.2 a listing or other identification of the records released;

. . . .

RESPONSE TO REQUEST NO. 17: Admits that Sundby Pharmacy no longer had any of this information available to it. Fred Sundby searched the pharmacy's files for such information but was unable to locate it. Therefore, Mr. Sundby sent Mr. Hannigan everything the pharmacy had, including Mr. Hannigan's prescription profile.

Because it is undisputed that Sundby Pharmacy violated § 146.83(2) and (3), STATS., the decisive issue becomes whether the parties' submissions in support of their respective motions for summary judgment establish beyond dispute that the violations either were, or were not, committed "in a manner that is knowing and wilful." If they were, Sundby Pharmacy faces liability to Hannigan for actual and exemplary damages under § 146.84(1)(b), STATS. If they were not, Hannigan's complaint for damages was properly dismissed. Sundby Pharmacy urges us to interpret § 146.84(1)(b) as did the trial court—that is, that the statute imposes liability only when the violator "know[s] of the statute and then wilfully violate[s] it." Hannigan contends that § 146.84(1)(b) does not require actual knowledge of the statute, either because it imposes strict liability for violations of § 146.83(2) and (3), STATS., or because a health care records custodian should be charged with constructive knowledge of § 146.83(2) and (3). We reject Hannigan's contention that § 146.84(1)(b),

STATS., imposes strict liability, but for the reasons we discuss below, we conclude that § 146.84(1)(b) does not require that the violator actually know of the statute violated.

Whether § 146.84(1)(b), STATS., imposes liability only when the records custodian has actual knowledge of § 146.83(2) and (3), STATS., is a matter of statutory interpretation, which is a question of law subject to our de novo review. *See Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96, 98 (1996). The main goal of statutory interpretation is to discern the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25–26, 559 N.W.2d 563, 566 (1997) (citations omitted). We first look to the plain language of the statute. *See id.* If the plain language is ambiguous, we turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent. *See id.*

We begin with the language of § 146.84(1)(b), STATS., which imposes liability on one "who violates s. 146.82 or 146.83 in a manner that is knowing and wilful." Wisconsin courts have long recognized that the term "wilful" is almost invariably ambiguous, and that its meaning depends on its context and the purpose for which it is used. *See State v. Preston*, 34 Wis. 675, 683 (1874), *cited with approval in DOT v. Transportation Comm'n*, 111 Wis. 2d 80, 330 N.W.2d 159 (1983). We conclude that the meaning of the term "knowing" is likewise variable, particularly as used here in the phrase "in a manner that is knowing and wilful." *Cf. State v. Fettig*, 172 Wis. 2d 428, 444 n.6, 493 N.W.2d 254, 261 (Ct. App. 1992) ("In Wisconsin, 'knowingly' and 'wilfully' are interchangeable terms."). The phrase is ambiguous insofar as it does not precisely specify

what must be "known" or "willed" in order to subject a medical records custodian to liability. Grammatically, "knowing" and "wilful" both modify "manner," but this does not make clear whether "knowing and wilful" requires: (1) actual knowledge of the statute violated; (2) only that the violation was the result of an intentional act (rather than an accident), and that the violator was aware of the underlying facts that constitute the violation; or (3) both of the foregoing.

██

Although § 146.84(1)(b), STATS., is ambiguous with respect to what needs to be known and willed, the statute unambiguously requires *some* mental state on the part of the violator, and we thus reject Hannigan's contention that it should be interpreted to impose strict liability for violations of § 146.82 or § 146.83.[4] Because the statutory language is ambiguous as to the meaning of "knowing and wilful," we next turn to extrinsic material to assist us in discerning the intent of the legislature.

Our review of the legislative history of § 146.84, STATS., does not resolve the ambiguity. Subsection (1) has remained unchanged since the enactment of

---

[4] As passed by the legislature, § 146.84(1)(a), STATS., would perhaps have imposed strict liability for certain violations of §§ 146.82 and .83, STATS. However, the language accomplishing that result was vetoed by the governor. In his veto message, the governor indicated that, as passed by the legislature, the paragraph "provides penalties for accidental violations of patient confidentiality," but that he was "vetoing this provision because I do not believe penalties should apply in cases of accidental violations of confidentiality." Governor Tommy Thompson, Veto Message on 1991 A.B. 91 (1991 Wis. Act 39), provisions relating to "Privacy Council and Access to Information," including § 2667n, at p.32.

§ 146.84 as part of the 1991 budget bill. *See* 1991 Wis. Act 39, § 2667n.[5] Our review of the drafting files at the Legislative Reference Bureau does not illuminate the legislative intent regarding the meaning of "knowing and wilful" in the context of ch. 146. Although enacted as part of the budget bill, the provision at issue is "substantially identical to proposals developed by the Legislative Council's Special Committee on Privacy and Information Technology."[6] We note, however, that

[5] The only amendments made to § 146.84, STATS., since its enactment involve the penalties enumerated in § 146.84(2), which are not at issue here. *See* 1993 Act 445, §§ 59–61. We note also that the substantive provisions in § 146.83(2) and (3), STATS., have remained unchanged since the enactment of §§ 146.81–.83, STATS., as part of the 1980 budget review bill. *See* Laws of 1979, ch. 221, § 649t.

[6] *See* Wisconsin Legislative Council Staff Memorandum regarding "Major Provisions of 1991 Assembly Bill 91, as Passed by the Legislature, Relating to Privacy of Personal Information Contained in State and Local Government Records and Medical Records" (July 11, 1991). Proposals developed by the Special Committee on Privacy and Information Technology "were inserted in the Budget Bill by the Conference Committee." *Id.* According to the Staff Memorandum, the "new remedies and penalties are based on, but not identical to, the current provisions of s. 51.30(9) to (11), Stats., which govern the treatment of records relating to mental illness, developmental disabilities, alcoholism or drug dependence." Similar sentiments are expressed in a prefatory note to the relevant draft endorsed by the Special Committee, *see* draft WLCS 309/2 (Mar. 6, 1991), and by the committee member who proposed the penalty provisions, who "noted that the penalties in s. 146.84 were modeled after the mental health records law in s. 51.30, Stats." *See* Special Committee on Privacy and Information Technology, Summary of Proceedings (June 17, 1991) at p.3. Prior to the enactment of § 146.84 in the 1991 budget bill, no specific penalties or remedies were provided for violations of §§ 146.82 and

the final wording of § 146.84(1)(b) was the result of a gubernatorial partial veto, which perhaps explains the awkward grammar and usage near the end of the paragraph.

As passed by the legislature, the paragraph in question read as follows, with the words later excised by the governor identified by strike-through:

> Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and wilful shall be liable to any person injured as a result of the violation for actual damages to that person; exemplary damages of ~~not less than~~ $1,000 ~~for each release of information in violation of s. 146.82, each denial of the rights to inspect or receive copies under s. 146.83(1) and each failure to provide a statement under s. 146.83(2); and costs and reasonable actual attorney fees incurred by the person~~ in an action under this paragraph. ~~It is not a prerequisite to an action under this paragraph by the person whose records are released in violation of s. 146.82, who was denied the right to inspect or receive a copy of records under s. 146.83(1), or who was not provided a statement required under s. 146.83(2) that he or she suffer or be threatened with actual damages.~~

The governor gave the following rationale in his veto message for deleting the struck-through language:

.83. The wording of § 146.84(1)(b), STATS., does indeed parallel that of § 51.30(9)(b), STATS., which includes the phrase "in a manner that was knowing and wilful." We were unable to discern in our review of the Special Committee materials, however, any further elucidation of what was specifically intended by the phrase, nor have we located any case law interpreting the relevant phrase in § 51.30(9).

[Section 146.84(1)(b) as passed by the legislature] also provides for recovery of not less than $1,000 in punitive damages for wilful violation of patient confidentiality and provides that the damages be awarded for each violation. I am vetoing the damages provision in order to limit punitive damages to $1,000 because I am concerned that providing for unlimited damages will lead to nuisance litigation in the anticipation of recovery of significant damages. I am vetoing the provision to award damages for each violation because of my concern over possible misinterpretation or abuse as a result of repeated similar requests.

[The paragraph as passed by the legislature] also provides that an individual need not suffer or be threatened with actual damages in order to bring an action under this section. I am vetoing this provision because it exposes the record holder to the possibility of frivolous or nuisance litigation.

Governor Tommy Thompson, Veto Message on 1991 A.B. 91 (1991 Wis. Act 39), provisions relating to "Privacy Council and Access to Information," including § 2667n, at pages 32–33. Although the veto message expresses the intent of the governor with respect to the damage provisions that survived his veto, it sheds no light on the legislature's intended meaning for the phrase "in a manner that is knowing and wilful."

We consider next the scope, context and purpose of the statute. Our inquiry here is guided by judicial interpretations of similar Wisconsin statutes which impose liability for knowing or wilful violations. We also find persuasive, as we have in the past, the United States Supreme Court's analysis of similar statutory language. *See, e.g., State v. Fettig*, 172 Wis. 2d 428, 443, 493 N.W.2d 254, 260 (Ct. App. 1992) (adopting the rationale of *Liparota v. United States*, 471 U.S. 419

(1985)). These cases demonstrate that the terms "knowing" and "wilful" are notoriously imprecise, and that the resolution of the question of whether ignorance of a statute is a defense to its violation largely depends on three factors: (1) the situation of the person or entity accused of a violation; (2) the nature of the conduct constituting the violation; and (3) whether the statute violated is criminal or civil in nature.

The first factor—and the one we consider to be most significant in the present case—involves an inquiry as to whether a defendant should be charged with knowledge of the statute violated, regardless of his or her actual knowledge. This question has arisen in the context of allegations of judicial misconduct. Section 757.81(4)(a), STATS., defines judicial misconduct to include "a wilful violation of a rule of the code of judicial ethics." For example, in *In re Complaint against Pressentin*, 139 Wis. 2d 150, 406 N.W.2d 779 (1987), the supreme court rejected a judge's contention that his violation was not wilful because he was not aware of the rule he violated. The court concluded that "[t]he judicial conduct panel correctly concluded that Judge Pressentin's violation of SCR 60.05 was willful, whether or not he had actual knowledge of the rule's prohibition, for the reason that, as a municipal judge, he was chargeable with the knowledge of the ethical rules governing municipal judges in Wisconsin." *Id.* at 155, 406 N.W.2d at 781; *see also In re Judicial Disciplinary Proceedings against Tesmer*, 219 Wis. 2d 709, 580 N.W.2d 307 (1998); *cf. Major v. County of Milwaukee*, 196 Wis. 2d 939, 945, 539 N.W.2d 472, 475 (Ct. App. 1995) ("[T]he law imputes actual knowledge to those who have 'the opportunity, by the exercise of ordinary care, to possess' it." (citation omitted)).

██ We conclude that, like judges, licensed pharmacists are charged with the knowledge of the statutes and regulations governing the practice of their profession. Just as it is judicial misconduct for a judge to wilfully violate the code of judicial ethics, it is professional misconduct for a licensed pharmacist to violate "any federal or state statute or rule which substantially relates to the practice of the licensee." Section 450.10(1)(a)2, STATS. We note that the substantive statutes at issue here, § 146.83(2) and (3), STATS., have been in effect and substantially unchanged since 1980. Thus, we conclude that Sundby Pharmacy and Fred Sundby, as entities licensed to practice pharmacy in Wisconsin, are charged with the knowledge of the rules regulating that practice, including § 146.83(2) and (3), regardless of their actual ignorance of the statutes they admit to violating.

The second factor is whether the conduct constituting the violation was "apparently innocent." In *Liparota v. United States*, 471 U.S. 419 (1985), the Supreme Court considered the federal statute regulating food stamp fraud, 7 U.S.C. § 2024(b)(1), which imposed criminal penalties on one who "knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations." The court acknowledged that the statutory language was ambiguous as to whether it imposed penalties only when the defendant knew of the statute and intended to violate it. The court ultimately concluded that the statute required proof that the defendant knew that his conduct was prohibited by law. The court reasoned that to hold otherwise would "criminalize a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426.

We adopted the *Liparota* rationale in *State v. Fettig*, 172 Wis. 2d 428, 443, 493 N.W.2d 254, 260 (Ct. App. 1992), in which we held that a violation of an environmental protection statute was wilful, regardless of the defendant's ignorance of the statute. The statute at issue in *Fettig* was § 144.74(2), STATS., 1991–92,[7] which imposed criminal penalties on "[a]ny person who wilfully . . . [s]tores, treats, transports or disposes of any hazardous waste without a license required under s. 144.64." The defendant had stored and disposed of hazardous waste without a license, but contended that his violation was not wilful because he did not know a license was required. We acknowledged that the statutory language was ambiguous, in that the language itself did not specify "whether the term 'wilfully' extends to the phrase 'without a license.' " *Id.* at 437–38, 493 N.W.2d at 258. We distinguished the case from *Liparota* on the grounds that the underlying conduct was not apparently innocent. We concluded that because the statute involved a "type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety," the defendant was subject to penalties regardless of his actual knowledge of the license requirement. *Id.* at 443–46, 493 N.W.2d at 260–61 (citation omitted).

Sundby Pharmacy's conduct at issue in this case was not so obviously threatening to the public welfare as the storage and disposal of the hazardous waste in *Fettig*. Nevertheless, the pharmacy's failure to maintain the information required under § 146.83(3), STATS., cannot be said to be "apparently innocent." A

---

[7] Section 144.74, STATS., has since been amended and renumbered as § 291.97. *See* 1995 Wis. Act 227, § 698.

reasonable pharmacist should know that the release of confidential prescription records poses a risk of significant harm to a patient, and that releases of prescription records are likely a subject of regulation. We acknowledge that Sundby Pharmacy's failure to provide the statement paraphrasing Hannigan's rights to access his medical records seems a lesser threat to the public welfare. On balance, however, we conclude that most of the conduct regulated by § 146.83 poses quite evident risks to the interests of a pharmacy's patients. Accordingly, we conclude that the second factor also weighs in favor of our interpreting § 146.84(1)(b), STATS., to impose liability even when the defendant has no actual knowledge of the statute violated, although this factor does not weigh so heavily as does the first factor.

The third factor is whether the statute at issue is a criminal statute that should, according to the "rule of lenity," be construed strictly in favor of the accused. *See Liparota*, 471 U.S. at 427. When a criminal statute is ambiguous with regard to whether criminal liability can be imposed without a showing that the defendant has specific knowledge of the statute, the rule of lenity gives rise to a presumption that the defendant's specific knowledge is required. *See id.* The Wisconsin Supreme Court has determined, however, that the rule requiring strict construction of criminal statutes does not apply to civil penalties imposed under a comprehensive regulatory statute. *See DOT v. Transportation Comm'n*, 111 Wis. 2d 80, 92, 330 N.W.2d 159, 164 (1983). Rather, comprehensive regulatory statutes should be liberally construed to effectuate the purpose of the legislation and facilitate enforcement. *See id.* at 92–93, 330 N.W.2d at 164–65.

In *DOT v. Transportation Commission*, an automobile dealer was charged with violating § 218.01(3)(a)6, STATS., which provided that a dealer's license may be denied, suspended or revoked for "wilful failure to perform any written agreement with any retail buyer." The dealer contended that the violation was not wilful, because the dealer had no malicious intent to defraud the buyer, but had simply made a mistake in drafting the sales contract. The court concluded that the violation was wilful even though the dealer had no malicious intent. The mental state at issue was the dealer's intent to defraud, rather than the dealer's knowledge of the statute violated. Nevertheless, the court's reasoning illuminates the present step in our analysis and is persuasive:

> Moreover, the proof of fraudulent or malicious intent is difficult, requiring either the middle or highest burden of proof. To so interpret the statute would defeat its purpose. . . . Basically, this is a consumer-protection statute, and enforcement should be facilitated to the extent that it may be consistent with the legislative intent. Here, where there are no penal sanctions, we ought not, by strictly construing the statute, place obstacles in the path of enforcement that the legislature did not clearly intend.

*Id.* at 93, 330 N.W.2d at 165. The court concluded that in the context of the regulation of automobile dealers,

> "wilful," as so used, means "intentional"—that fraud or malice are not elements to be proved where a dealer has not conformed to the requirements of sec. 218.01(3)(a)6. It is enough that a dealer intentionally, i.e., "wilfully," failed to perform a written agreement with a retail buyer.

*Id.* at 95, 330 N.W.2d at 166.

Like the statute at issue in *DOT v. Transportation Commission*, the statutes at issue here establish a protective regulatory scheme that should be interpreted liberally to effectuate its purpose and to facilitate its enforcement. If we were to interpret § 146.84(1)(b), STATS., to impose liability only when the custodian has actual knowledge of the statute violated, we would undermine the private enforcement of § 146.83(2) and (3), STATS., which the legislature has expressly authorized. Such an interpretation would also provide an incentive for medical records custodians to remain ignorant of the statutes and regulations concerning the maintenance and release of medical records. Moreover, as this case perhaps demonstrates, proving the custodian's actual knowledge of the statute would often be difficult, with the result that valid claims for damages could be defeated by a custodian's simple assertion that he or she was ignorant of the law.

In sum, the three factors we derive from decisions of the Wisconsin and United State Supreme Courts interpreting the meaning of the terms "knowing" and "wilful" weigh in favor of an interpretation of § 146.84(1)(b), STATS., which imposes liability regardless of a custodian's actual knowledge of § 148.83(2) or (3), STATS. We thus conclude that the scope, context and purpose of the statute, since it is part of a regulatory scheme governing the conduct of licensed medical providers, resolve the ambiguity in a manner that is contrary to the trial court's conclusions and to Sundby Pharmacy's position in this appeal. Since we have also concluded, however, that the statute does not impose strict liability for violations of § 148.83(2) or (3), we

must next determine what must be known and willed in order for liability to be imposed under § 146.84, STATS.

We conclude that the statute imposes liability only if the violation is "wilful" in the sense that the act that caused the violation was intentional and voluntary, rather than inadvertent or coerced. *Cf. DOT v. Transportation Comm'n*, 111 Wis. 2d at 95, 330 N.W.2d at 166; *In re Complaint against Pressentin*, 139 Wis. 2d 150, 154, 406 N.W.2d 779, 781 (1987) (noting that the term "willful" has been interpreted in judicial disciplinary proceedings "to mean that an act was the result of the actor's free will and not as a result of duress or coercion"). The violation must also be "knowing" in the sense that the custodian was aware of the underlying facts that make the act a violation, even though the custodian's actual knowledge of the statute violated is immaterial.[8] *Cf. Liparota*, 471 U.S. at 434–43 (White, J., dissenting). In this regard, we note that Sundby Pharmacy's violations consist of failures to perform required acts, rather than the performance of affirmative acts in violation of the statutes. In light of the factors that we have considered above, we conclude that a failure to act may be shown to be not knowing and wilful within the meaning of § 146.84(1)(b), STATS., if the failure is an unintended deviation from a custo-

---

[8] For example, if a custodian were to release records to someone who presented an apparently authentic consent form signed by a patient, but which was actually a forgery, the custodian might avoid liability by establishing that he or she did not know that the consent was falsified. *Cf.* § 146.84(1)(a), STATS., which provides that a custodian "incurs no liability . . . for the release of records in accordance with s. 146.82 or 146.83 while acting in good faith"; *see also* n.4, above.

dian's ordinary policies or procedures that comply with the requirements of § 148.83(2) and (3), STATS.

Even though both parties moved the trial court for summary judgment, we conclude that granting summary judgment to either is inappropriate on the present record because a genuine dispute of material fact remains as to whether Sundby Pharmacy's violations of § 146.83(2) and (3), STATS., were "in a manner that is knowing and wilful" as we have interpreted the phrase. The materials submitted in support of each party's motions for summary judgment would support conflicting inferences on the issue of whether Sundby Pharmacy's ordinary policies or procedures generally complied with § 146.83(2) and (3). Fred Sundby stated in his affidavit that the letter requesting access to Hannigan's records, and the release purportedly signed by Hannigan, were "accidentally disposed of by our office after Sundby Pharmacy completed the record request." This suggests that, without some accident, Sundby Pharmacy would have retained the copies of the request and the release.[9] Sundby Pharmacy's response to one of Hannigan's requests for admission, however,

---

[9] Strictly speaking, Sundby Pharmacy was not statutorily required to retain a copy of the letter requesting Hannigan's health care records, or of the release purportedly signed by Hannigan. Section 146.83(3), STATS., contains no requirement that copies of requests or releases be retained. Retaining copies of letters and releases may be a convenient means of noting some of the information required by § 146.83(3). Retaining copies, however, without more information, would not be sufficient to fully comply with § 146.83(3), because the statute also requires that the custodian note what records are actually released for inspection and the date and time of the inspection.

tends to suggest that Sundby Pharmacy had no policy of retaining the information required by § 146.83(3):

> REQUEST NO. 8: On or about November 12, 1996, Fred Sundby of Sundby Pharmacy told Mr. Hannigan that Sundby Pharmacy did not keep Medical Information Releases, cover letters (detailing the names of the persons/agency to which the medical records had been released), a separate file containing such information or any medical records beyond the actual prescription profile(s) themselves.
>
> RESPONSE TO REQUEST NO. 8: Admits that, at that time, Sundby was not keeping a separate file for medical releases.

As for the violation of § 146.83(2), STATS., the record contains no evidence one way or the other regarding whether Sundby Pharmacy's ordinary policy and procedure was to provide a statement paraphrasing its patients' rights to access their medical records. We conclude, therefore, that whether Sundby Pharmacy's violations of § 146.83(2) and (3) were committed "in a manner that is knowing and wilful" remains, at this point, a disputed fact. We note, as well, that Hannigan's submissions do not establish the extent of actual damages, if any, that he may have suffered on account of the violations.

Thus, neither party is entitled to judgment on the present record and we remand for further proceedings in the trial court.

## CONCLUSION

For the foregoing reasons, we reverse the order dismissing Hannigan's complaint against Sundby Pharmacy, and we remand for further proceedings con-

sistent with the interpretation of § 146.84(1)(b), STATS., discussed in this opinion.

*By the Court.*—Order reversed and cause remanded.