James Szymczak, Plaintiff-Appellant,

v.

Terrace at St. Francis, Defendant-Respondent.

Court of Appeals

*No. 2004AP2067. Oral argument December 7, 2005.
—Decided December 28, 2005.*

2006 WI App 3

(Also reported in 709 N.W.2d 103.)

111

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Carol J. Wessels* of *Wessels Law Office, L.L.C.*, of Cedarburg, with oral argument by *Carol J. Wessels*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant C. Killoran* and *Jacquelyn A. Champagne*, of *Michael, Best & Friedrich, LLP*, of Milwaukee, with oral argument by *Jacquelyn A. Champagne*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. James Szymczak appeals the grant of summary judgment to The Terrace at St. Francis ("the Terrace"), a nursing home affiliated with St. Francis Hospital, in his suit seeking to compel it to release his mother's medical records and to pay him monetary damages pursuant to WIS. STAT.

§ 146.84(1)(b) (2003–04).[1] Szymczak argues that the trial court erred in granting summary judgment to the Terrace because: (1) his request for his mother's medical records conformed with the informed consent requirements set out in WIS. STAT. § 146.83; and (2) under § 146.84, the Terrace's refusal to release the records was knowing and willful, thus entitling him to damages. We determine that when the Terrace refused to honor Szymczak's request for the records due to its belief that Mrs. Szymczak was possibly "incompetent to consent to the release of [medical] records," pursuant to WIS. STAT. § 146.81(5), it was obligated to seek a temporary guardian for Mrs. Szymczak. Consequently, summary judgment was improvidently granted. Therefore, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion to determine whether the Terrace's refusal to release Mrs. Szymczak's medical records was "knowing and willful" pursuant to WIS. STAT. § 146.84(1)(b).

## I. BACKGROUND.

¶ 2. This litigation grows out of a now-dismissed petition for guardianship and protective placement of Eleanore Szymczak, James Szymczak's mother, brought by St. Francis Hospital. Mrs. Szymczak was admitted to St. Francis hospital for a medical condition. Before coming to the hospital, Mrs. Szymczak had lived independently and had previously given her son, James, power of attorney over her health care decisions. While in the hospital, the staff became concerned over her mental state as she was, according to the staff, exhib-

---

[1] Szymczak subsequently obtained the medical records.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

113

iting periods of confusion. The hospital sought a psychiatric consultation. The doctor issued a report determining that Mrs. Szymczak's psychiatric condition prevented her from making competent health care decisions. The doctor recommended that Mrs. Szymczak be placed in assisted living, and the doctor expressed a concern over Szymczak continuing to have power of attorney over Mrs. Szymczak's health care decisions because Szymczak had, according to the doctor's report, tried to remove Mrs. Szymczak from the hospital.

¶ 3. After Mrs. Szymczak and her son apparently resisted the suggestion that Mrs. Szymczak be admitted to the Terrace, the hospital filed a petition seeking a guardianship and sought authority to place Mrs. Szymczak in its affiliated nursing home pursuant to Wis. Stat. § 50.06. The guardianship petition, seeking permanent protective placement for Mrs. Szymczak, bears a filing date with the trial court of July 2, 2003.[2] However, Mrs. Szymczak had already been admitted to the nursing home before the trial court authorized the proposed guardian to act on Mrs. Szymczak's behalf. As the record now reveals, the proposed temporary guardian, listed in St. Francis Hospital's guardianship papers as "WE FOUR," a corporate guardian, authorized Mrs. Szymczak's admission to the nursing home before having any legal authority to do so.

---

[2] At oral argument, the panel was presented with an exhibit by the respondent reflecting the date of July 1, 2003, as the date the guardianship was filed. The attorney for the Terrace claimed her independent investigation revealed the guardianship was actually filed on July 1, 2003, not July 2, 2003, as noted on the time stamp. We could find nothing in the record to support that contention.

¶ 4. Acting *pro se,* James Szymczak objected to the guardianship proceeding and attempted to have the guardianship dismissed. He filed both an objection to the guardianship and an emergency motion to dismiss. Both were unsuccessful. Later, he made a request to be named Mrs. Szymczak's temporary guardian, claiming he felt his mother was not incompetent.[3] His request was denied. During the guardianship proceeding, the trial court issued an order permitting Mrs. Szymczak's advocacy counsel access to her medical records. The order had been prepared listing other individuals to be given a copy of the medical records, including Szymczak. The trial court refused to sign the order allowing others to see Mrs. Szymczak's medical records because the court did not believe it had the authority to release Mrs. Szymczak's medical records to anyone else, stating: "I don't think I can order this. Eleanore Szymczak is at this point legally entirely able to make her own decisions. You can't be deciding who to disclose her private records to. I don't think I can order that, and I don't think that's appropriate for you to do."

¶ 5. In the course of opposing the guardianship and his mother's admission to the nursing home, Szymczak attempted to find out who had authorized her admission. Consequently, on December 3, 2003, while the guardianship was pending, Szymczak presented to the Terrace an authorization signed by Mrs. Szymczak and witnessed by Szymczak seeking a copy of Mrs. Szymczak's medical records. The Terrace refused to release the medical records to him. In a later affidavit, the administrator of the Terrace acknowledged that the

---

[3] The guardianship record is not before us. However, we take judicial notice of the presiding judge's order entered on February 3, 2004, concerning the guardianship, and a partial transcript of an earlier trial court ruling.

request for Mrs. Szymczak's medical records was not honored. While it is unclear what reason, if any, the Terrace gave Szymczak for its refusal,[4] in this litigation it has taken the position that it refused to honor the request because a guardianship was pending and because it knew of the psychological report that questioned Mrs. Szymczak's competency. Consequently, it did not believe there was an informed consent by Mrs. Szymczak for the release of her records.

¶ 6. On September 23, 2003, in response to a complaint lodged by Szymczak, the State of Wisconsin Bureau of Quality Assurance determined that the Terrace failed to meet the requirements of WIS. STAT. § 50.06 when Mrs. Szymczak was admitted and ordered the Terrace to correct the violation.[5] Szymczak then brought suit against the Terrace, seeking the release of the documents and monetary damages pursuant to WIS. STAT. § 146.84.

¶ 7. After this case was commenced in March 2004, the Terrace unsuccessfully attempted to consolidate the two matters. The Terrace was also unsuccessful in its motion seeking to have the trial judge in the guardianship proceeding, which was dismissed in April 2004, "confer" with the trial judge presiding over this case. Ultimately, both the Terrace and Szymczak brought summary judgment motions. The trial court, believing the matter was moot, and apparently incorrectly believing that the trial judge presiding over the guardianship proceeding had prohibited Szymczak

---

[4] Szymczak stated in his complaint that the administrator refused to release the records after conferring with the Terrace's attorney.

[5] Szymczak also made formal complaints against several of the lawyers involved in this litigation, as well as one of the judges.

from viewing his mother's medical records, ruled that "there is no basis for a lawsuit, under either grounds that the defendants willingly concealed documents or that they intentionally falsified records,"[6] and granted summary judgment to the respondents. Several months later, Szymczak brought a motion seeking relief from the summary judgment, coupled with a request to supplement the record. The motion was denied and this appeal followed.

## II. ANALYSIS.

¶ 8. Szymczak contends that the trial court erred when it granted summary judgment to the Terrace. He submits he presented a proper authorization to the Terrace to obtain his mother's medical records, and that the Terrace knowingly and willfully refused to honor the request, contrary to WIS. STAT. § 146.84(1)(b); and thus, he is entitled to damages.

¶ 9. The Terrace first argues that waiver prevents this court from addressing the issues raised by Szymc-

---

[6] The trial court presiding over this matter may have been misled by the order found in the guardianship record which permitted Mrs. Szymczak's advocacy attorney to have access to her medical records and contained crossed out names. As noted, the attorney who presented the order had proposed that Szymczak and others also have access to the records. The trial court refused to permit the other people listed in the order to have access to Mrs. Szymczak's medical records, declaring that she did not have the authority to release the medical records to others, and that Mrs. Szymczak should decide who sees her medical records. However, the order with the crossed out names, including Szymczak's name, gave the impression that the trial court prohibited Szymczak from viewing the records. This incorrect impression was also advanced by the Terrace's attorneys.

117

zak. We disagree. The waiver rule is subject to our discretionary review. Here we decide that justice requires us to delve into the issues raised by Szymczak. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1980) (waiver is rule of judicial administration not appellate jurisdiction). As to Szymczak's contentions, the Terrace admits that the medical records were not produced, but claims now that it had a right to refuse the request because the existence of the guardianship and its knowledge of the doctor's psychiatric report calling into question Mrs. Szymczak's competency, and therefore, her ability to give informed consent.

¶ 10. In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. *Delta Group, Inc. v. DBI, Inc.*, 204 Wis. 2d 515, 520, 555 N.W.2d 162 (Ct. App. 1996).

¶ 11. In *Preloznik v. City of Madison*, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be used in summary judgment:

> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judg-

ment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.

Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.

*Id.* at 116 (citations omitted).

¶ 12. Here, the parties dispute the meaning of a statute dealing with the release of medical records. Thus, this dispute obligates us to interpret a statute. "Statutory interpretation is a question of law that we review de novo." *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769.

¶ 13. As observed in *Hannigan v. Sundby Pharmacy, Inc.*, 224 Wis. 2d 910, 593 N.W.2d 52 (Ct. App. 1999):

The main goal of statutory interpretation is to discern the intent of the legislature. We first look to the plain language of the statute. If the plain language is ambiguous, we turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent.

*Id.* at 920 (citations omitted).

¶ 14. WISCONSIN STAT. § 146.82 mandates that all patient health care records remain confidential. Section 146.82(1) states: "All patient health care records shall remain confidential." The statute also allows for the

119

release of health care records. "Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient." *Id.*

¶ 15. WISCONSIN STAT. § 146.83 regulates access to health care records. Section 146.83(4)(b) includes the following prohibition:

**Access to patient health care records.**

. . . .

(4) No person may do any of the following:

. . . .

(b) Conceal or withhold a patient health care record with intent to prevent or obstruct an investigation or prosecution or with intent to prevent its release to the patient, to his or her guardian appointed under ch. 880, to his or her health care provider with a statement of informed consent, or under the conditions specified in s. 146.82 (2), or to a person with a statement of informed consent.

¶ 16. WISCONSIN STAT. § 146.84 sets out the penalties for violating WIS. STAT. § 146.83. In pertinent part, § 146.84 reads:

**Violations related to patient health care records.**
**(1)** ACTIONS FOR VIOLATIONS; DAMAGES; INJUNCTION.

. . . .

(b) Any person, including the state or any political subdivision of the state, who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for

120

actual damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

¶ 17. Szymczak submits that he is entitled to summary judgment because he presented a document containing the necessary information as set forth in Wis. Stat. § 146.81(2) in an attempt to learn who authorized his mother's admission, and the Terrace knowingly and willfully refused to give him the records.

¶ 18. The Terrace counters that it had a right to refuse to release the medical records because there exists an underlying assumption in the informed consent law that the person giving consent has the mental capacity to do so, and here, there was no informed consent because the Terrace had reason to believe that Mrs. Szymczak was possibly incompetent.

¶ 19. Wisconsin Stat. § 146.81 is entitled "Health care records; definitions." Section 146.81(2) states:

"Informed consent" means written consent to the disclosure of information from patient health care records to an individual, agency or organization that includes all of the following:

(a) The name of the patient whose record is being disclosed.

(b) The type of information to be disclosed.

(c) The types of health care providers making the disclosure.

(d) The purpose of the disclosure such as whether the disclosure is for further medical care, for an application for insurance, to obtain payment of an insurance claim, for a disability determination, for a vocational rehabilitation evaluation, for a legal investigation or for other specified purposes.

(e) The individual, agency or organization to which disclosure may be made.

(f) The signature of the patient or the person authorized by the patient and, if signed by a person authorized by the patient, the relationship of that person to the patient or the authority of the person.

(g) The date on which the consent is signed.

(h) The time period during which the consent is effective.

¶ 20. While WIS. STAT. § 146.81(2) claims to define "informed consent," actually it sets out only the information which must accompany a request by another for a patient's health care records in order to conform to the statute. Nowhere in this section is there any mention of a requirement that the party authorizing the release of medical records be competent. However, other parts of the statute do discuss the competency question. Section 146.81(5) discusses who can be the "[p]erson authorized by the patient":

"Person authorized by the patient" means the parent, guardian or legal custodian of a minor patient, as defined in s. 48.02 (8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34 (4d), (4h), (4m) or (4n), the guardian of a patient adjudged incompetent, as defined in s. 880.01 (3) and (4), the personal representative or spouse of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05 (2), except as limited by the power of attorney for health care instrument. If no spouse survives a deceased patient, "person authorized

by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895 (1) (d) . . . .

Included in this list is "any person authorized in writing by the patient," as well as "the guardian of a patient adjudged incompetent." Thus, had Mrs. Szymczak been found incompetent, her guardian could have authorized the release of her medical records. However, Mrs. Szymczak was never found incompetent. The commencement of the guardianship only raised the possibility that she might have been incompetent.

¶ 21. WISCONSIN STAT. § 146.81(5) also includes a reference to a "patient believed incompetent to consent to the release of records." The statute states that under such circumstances, "[a] court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient." Although a guardian had been appointed for Mrs. Szymczak in the guardianship proceeding, it is clear that the trial court gave the guardian no authority to release Mrs. Szymczak's medical records. Moreover, no one petitioned the trial court presiding over the guardianship to appoint a guardian for the purpose of deciding who could obtain the medical records.

¶ 22. The Terrace acknowledges that the statute provides for the release of records for "a patient believed incompetent," but it claims that the duty to seek such an appointment rests with the person, in this case Szymczak, who presented them with a signed authorization from a patient the Terrace believed was incompetent. We disagree.

¶ 23. Although WIS. STAT. § 146.81(5) directs that a court may appoint a temporary guardian for a person believed incompetent, the statute is silent with regard to who bears the burden of petitioning the court. The Terrace contends Szymczak was responsible for petitioning the court, while Szymczak claims that the responsibility rested with the Terrace. A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 47, 271 Wis. 2d 633, 681 N.W.2d 110. If a statute is ambiguous, we look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. *Id.* Whether a statute is ambiguous is a question of law. *Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216 (Ct. App. 1994). Our examination of the legislative history to determine the legislative intent in enacting the provision does not resolve the ambiguity. Section 146.81 was enacted in 1979. The wording of § 146.81(5) as it relates to a "patient believed incompetent" has remained unchanged since that date. Further, we could find no case law discussing who should petition the court for a temporary guardian.

¶ 24. We note, however, that the statute is worded to read, "a patient believed incompetent." In this instance, it would have been illogical for Szymczak to petition the court because he believed his mother competent. Further, despite Szymczak's many attempts to intervene, he was not a party to the guardianship proceeding. The Terrace, however, was both a party to the guardianship proceeding and was of the belief that Mrs. Szymczak was incompetent. It would not have

required much effort on the part of the Terrace, once presented with Szymczak's request for Mrs. Szymczak's medical records, to ask the trial court to appoint a guardian for the purpose of deciding who could obtain Mrs. Szymczak's medical records. Moreover, according to a tenet of law, the party who asserts the affirmative of a proposition has the burden of proof. *See Estate of Anderson v. Anderson*, 147 Wis. 2d 83, 88, 432 N.W.2d 923 (Ct. App. 1988). Here, the Terrace thought Mrs. Szymczak incompetent. So the Terrace had the burden of notifying the court. Thus, we conclude that the Terrace should have done more than simply deny Szymczak's request for his mother's medical records. As the statute directs, the Terrace should have petitioned the court for the appointment of a temporary guardian. We are also of the opinion that giving the medical records custodian decision-making power over who is entitled to medical records is poor public policy. If the records contain information damaging to the custodian or others associated with the custodian, including colleagues, they may deny access for fear of disclosure.

¶ 25. Our interpretation is also in keeping with the underlying legislative policy that requires strict compliance with the statutory rules for medical records. By creating Wis. Stat. § 146.84, which sets out the remedies available to an aggrieved party, the legislature clearly intended to punish those who do not honor the confidentiality of medical records or adhere to the procedures set forth in Wis. Stat. §§ 146.82 and 146.83.[7] As proof of the seriousness with which the legislature viewed compliance, we note that when originally

---

[7] The history of Wis. Stat. § 146.84 is set out in detail in *Hannigan v. Sundby Pharmacy, Inc.*, 224 Wis. 2d 910, 920–24, 593 N.W.2d 52 (Ct. App. 1999).

passed, § 146.84 set the limit for exemplary damages at $1,000. In 1999, the legislature amended the statute, raising the limit for exemplary damages to $25,000, and permitting an aggrieved party to be reimbursed for attorney fees. Clearly, this action reflects a legislative policy that offenders will be treated severely for violating either §§ 146.82 or 146.83. Consequently, the trial court's conclusions and grant of summary judgment to the Terrace was inappropriate, and we remand this matter back to the trial court for further proceedings consistent with our decision.

*By the Court.*—Order reversed and cause remanded with directions.