John P. TIERNEY,
Petitioner-Respondent-Cross-Appellant,

v.

Rebecca A. BERGER,
Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 2011AP565. Submitted on briefs April 4, 2012.
—Decided July 3, 2012.*

2012 WI App 91

(Also reported in 820 N.W.2d 459.)

681

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Patricia L. Grove* and *Carolyn R. Parkinson* of *Halling & Cayo, S.C.,* of Milwaukee.

On behalf of the petitioner-respondent-cross-appellant, the cause was submitted on the brief of *Kelly M. Dodd* of *Whyte Hirschboeck Dudek S.C.,* of Milwaukee.

On behalf of the *guardian ad litem,* the cause was submitted on the brief of *Patrick F. Jennings* of Mukwonago.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J. Rebecca A. Berger appeals the trial court's decision allowing John P. Tierney, Berger's former husband and the father of two of her children, to apply his bonus income to his child support "arrears" rather than applying the bonus income to his current child support order, and its decision refusing to impose the statutory interest requirement on Tierney's child support "arrears." Further, she submits that the trial court erred in deciding that the newly-imposed child support order should start following the *de novo* hearing held in the trial court rather than beginning the

child support order to run from the effective date of the earlier (and vacated) family court commissioner's order setting child support.

¶ 2. Although the trial court and the parties referred to child support "arrears," in fact there were no arrears in the conventional sense of the word. Thus, the trial court did not erroneously exercise its discretion when it permitted twenty-five percent of the anticipated bonus income to be applied to what is actually a lump-sum award of child support ordered by the court. Further, the trial court properly declined to award interest on the lump-sum child support because the interest statute only applies when money is due from an ongoing child support order and there was none here. Finally, the trial court was free to start the new child support order as of the date of the decision of the *de novo* hearing. Inasmuch as the lump-sum award represented child support that would have been paid had the trial court not vacated the family court commissioner's child support order, starting the order as of the date of the trial court's decision was appropriate.

¶ 3. Tierney cross-appeals the trial court's order modifying the child support order he is to pay Berger, claiming that Berger failed to prove that a substantial change in circumstances had occurred since the setting of the previous child support order. Further, he argues that the trial court entered orders inconsistent with its findings and legal conclusions; and finally, he contends that the trial court erred in setting a child support order consisting of both a flat dollar amount and a percentage order because such an order is contrary to Wis. Stat. §§ 767.511(1)(a) and 767.553 (2009–10).[2]

_____

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

Because a substantial change of circumstances was proven, the trial court's findings and legal conclusions were consistent; we also conclude that the trial court did not err in setting a percentage order on Tierney's future bonuses. We affirm the trial court's order.

### I. BACKGROUND.

¶ 4. Tierney filed for divorce on May 3, 1999. At the time the divorce petition was filed, the parties had been married for approximately seven years and had two children. A divorce was granted on September 14, 1999, based upon a stipulated marital settlement agreement. As pertinent to the disputes in this appeal, the parties originally agreed to joint legal custody and shared placement with the children. According to the marital settlement agreement, Berger had the children sixty percent of the time and Tierney forty percent. As a result of this shared placement arrangement, Tierney agreed to pay seventeen percent—as opposed to twenty-five percent—of his gross income as child support.[3] In June 2001, the parties entered into another stipulation changing the placement to substantially equal physical placement of the children and agreeing that the child support would be held open. Later, in 2006, the parties once again stipulated to a change in the children's placement, but the child support hold open continued.

---

[3] These percentage standards, along with the directions for calculating income subject to them, were originally located in WIS. ADMIN. CODE ch. HSS 80. *See Sullivan v. Bautz,* 2006 WI App 238, ¶ 10 n.3, 297 Wis. 2d 430, 724 N.W.2d 908. Chapter HSS 80 as it existed on July 31, 1999 was renumbered chapter DWD 40. *See* WIS. ADMIN. REGISTER, July 1999, No. 523, effective August 1999. Chapter DWD 40 was renumbered to chapter DCF 150 under WIS. STAT. § 13.92(4)(b)1. *See* WIS. ADMIN. REGISTER, November 2008, No. 635. The percentage standards are currently located in WIS. ADMIN. CODE § DCF 150.03(1).

¶ 5.   In early 2009, Berger brought a motion seeking a change in the child support order based upon her allegations that Tierney intended to move out of state, that he had not exercised his placement as was originally contemplated, and the fact that the oldest child was now in high school. Ultimately, on September 1, 2009, after a hearing, the family court commissioner determined that, "[g]iven father's move to another state the current order of 'shared placement' has been rendered a fiction." As a result, the family court commissioner entered an order as follows:   "Effective April 01, 2009 – the first full month after 'notice' to father that the issue was pending per s.767.59(lm), [STATS.], – he is to contribute $1,960.00 in monthly support having been reduced from $2,012.72 by the high income[] obligor consideration under DCF 150.04(5)."

¶ 6.   Pursuant to WIS. STAT. § 757.69(8), Tierney moved for a *de novo* hearing of the family court commissioner's order. This request was made on September 17, 2009. While the *de novo* hearing was pending, Tierney petitioned the family court commissioner to stay the implementation of the child support order. The family court commissioner declined to do so; however, the trial court vacated the child support order in November 2009.

¶ 7.   A contested *de novo* hearing, heard over several days, was concluded on June 9, 2010. The trial court found that:

* there had been a substantial change in circumstances;

* Tierney's yearly income was $83,249.92; in addition, he was eligible to receive bonuses, and in 2009 he received a bonus of $99,646.08;

* Berger had remarried and had no outside income;

687

* given Tierney's current placement with the children, the shared placement formula for setting child support should no longer apply;

* Tierney's contention that he spends $1666 per month on the children was rejected;

* effective April 1, 2009, the family court commissioner's earlier order requiring Tierney to pay twenty-five percent of his gross base income (approximately $1960) was to continue until June 9, 2010;

* commencing June 10, 2010, Tierney was to pay twenty-five percent of his gross base income ($1734.37) as child support;

* effective June 9, 2010, a deviation from the percentage standards was ordered regarding Tierney's bonuses;

* Tierney's bonus income will be determined at the end of each year and twenty-five percent of that bonus income shall be paid towards the arrears, and once the arrears are paid in full, the bonus money will be paid as child support;

* once the arrears are paid in full, Tierney shall be given credit for being a high income payer;

* the parties are to split equally all uninsured medical expenses for the children; and finally,

* the parties stipulated that Tierney had already paid $1800 toward the arrears in this case.

## A. Berger's Appeal

1. *The trial court's decision to apply the bonus income to the "arrears" was a proper exercise of discretion.*

■

¶ 8. We review a trial court's determination of child support under an erroneous exercise of discretion

standard. *See Modrow v. Modrow*, 2001 WI App 200, ¶ 9, 247 Wis. 2d 889, 634 N.W.2d 852.

¶ 9. WISCONSIN STAT. § 767.511(1j) obligates the trial court to "determine child support payments by using the percentage standard established by the department under [WIS. STAT. §] 49.22(9)." Currently, the Department of Children and Families guidelines state that child support for two children should be set at twenty-five percent of a parent's income.[4]

¶ 10. Trial courts are statutorily permitted to deviate from the child support guidelines. Pursuant to WIS. STAT. § 767.511(1m), "the court may modify the amount of child support payments . . . if, after considering [certain] factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties." *See id.* The trial court may also consider any

---

[4] WIS. ADMIN. CODE § DCF 150.03(1) (Jan. 2010) provides, in pertinent part:

> (1) DETERMINING CHILD SUPPORT USING THE PERCENTAGE STANDARD. The court shall determine a parent's monthly income available for child support by adding together the parent's annual gross income or, if applicable, the parent's annual income modified for business expenses; the parent's annual income imputed based on earning capacity; and the parent's annual income imputed from assets, and dividing that total by 12 . . . . Except as provided in s. DCF 150.04(4) and (5), the percentage of the parent's monthly income available for child support or adjusted monthly income available for child support that constitutes the child support obligation shall be:
>
> (a) 17% for one child;
>
> (b) 25% for 2 children;
>
> (c) 29% for 3 children;
>
> (d) 31% for 4 children; and
>
> (e) 34% for 5 or more children.

other factor other than those listed in the statute that the court deems relevant. *See* § 767.511(1m)(i).

¶ 11. Berger argues that the trial court erred in applying future bonus income to Tierney's arrears rather than making it available for the current support of the minor children. Additionally, she submits that the trial court failed to make the appropriate finding that permitted a deviation from the child support guidelines.

██

¶ 12. We agree with Berger that ordinarily bonus income should be considered income when setting a child support order. *See Schinner v. Schinner*, 143 Wis. 2d 81, 103–04, 420 N.W.2d 381 (Ct. App. 1988). However, we disagree with her contention that the trial court failed to make the necessary findings to deviate from the child support guidelines.

¶ 13. The trial court was mindful of the fact that findings needed to be made. First, in its oral decision, the trial court advised the parties that: "The court . . . has to say why it's deviating in writing." The court also commented on the fact that due to its vacating the family court commissioner's order (a decision the trial court observed was, in retrospect, unwise), a gap in child support had been created. Because the monthly child support order of $1960 was vacated in November 2009, Berger was deprived of child support amounting to more than $25,000 for over a year after filing her request. Recognizing that fact, the trial court stated: "And I find that I am going to make a deviation. I am doing this based on the greater weight of the credible evidence only as to the bonus." The trial court then explained that the amount of bonus was unknown and would not be known until the end of the year. The trial court then said that it was deviating from ordering the bonus income to be

assessed as monthly child support, and instead, the twenty-five percent bonus income will be assessed towards the "arrears" that built up from the family court commissioner's start date for child support up until June 9, 2010, less any money actually paid.

> And, sir, you should know that it is 25 now. It will be tough for you, you and your wife and your new family. I am making this deviation to take the bonuses off your back for this period of time and until the arrears are paid up because I am considering that you have a new family, and they shouldn't become destitute or impoverished or lose out. You have travel expenses that you may or may not be using to get back up from Illinois, get [your daughter] down there, and I believe base support is sufficient to support the needs of these two young ladies now, the support based on that.

Clearly, the trial court found that without a deviation, the immediate payment of twenty-five percent of the bonus income as child support plus the new twenty-five percent child support order from Tierney's base pay and the repayment of the missing child support because of the gap in child support would be unfair to Tierney and his new family.

¶ 14. The trial court was also concerned that there be no double counting; that is, that Tierney would get credit for the bonuses towards "arrears," but would not have to pay support on that money at the same time. The trial court explained that:

> Now this will take some calculation. But we don't know what the bonus is. It would be speculating. We could do it so many months or factor it in what it was and that snapshot in history, [but] I don't want to do that. I want the bonuses to be determined at the end of each year, and that percentage of those bonuses – now

691

this is the deviation which is an odd deviation – to be assessed towards the arrears that he hasn't paid from the date of the [family court commissioner]'s ruling, give him credit, whatever up until today's date. Whatever those arrears would be, that amount, which would be added up, and that's just numbers, the bonus can be assessed towards that.

In other words, at the end of the year, when we determine what 25 percent of that bonus is, the deviation will allow that bonus to go towards the arrears. This will clear up some of the friction and so on. So it will be assessed towards those arrears from the date of the [family court commissioner]'s ruling with credit given for monies he's paid up until today's date. From this day forward it will be 25 percent of his known income as indicated by his base salary. And then after those arrears are paid up, it will also be high income [payer], a percentage of that bonus.

Now I don't want any double-counting – that he gets credit for the bonuses towards arrears and also being asked to do it towards support at this point. I don't know whether that will go beyond the standard. There will have to be some adjustments if it does. But I will set that formula.

. . . .

But again, the bonus, we have to use the full amount. Once the arrears are paid off, can't give him a bonus to have a bonus . . . .

██

¶ 15.   We also observe that despite the trial court's reference to the "arrears," there were in fact no actual arrears in this case. BLACK'S LAW DICTIONARY 116 (8th ed. 2004) defines arrear as:   "[a]n unpaid or overdue debt." *See also id.* at 775 (defining "in arrears" as being "[b]ehind in the discharging of a debt or other obligation"). Because of the trial court's action in vacating the

family court commissioner's order, Tierney had no legal obligation to pay any child support from November 2009 until the trial court ordered him to do so on June 9, 2010. The trial court's use of the word "arrears" was used to describe the lump-sum amount being set in an attempt to craft a solution for the gap in child support caused by the trial court's vacation of the child support order. This gap resulted in no child support order being in place for over a year. The trial court reasoned that requiring Tierney to pay the new twenty-five percent child support order plus the amounts that should have been paid during the time the *de novo* hearing was pending, and twenty-five percent of the bonus income, would be unfair to Tierney and his second family. This was a proper consideration by the trial court. As such, it was a relevant factor and permitted under WIS. STAT. § 767.511(1m)(i). As noted, once the "arrears" are paid in full, Tierney will be paying twenty-five percent of his bonus income towards child support.

2. *The trial court properly refused to order interest because no actual "arrears" existed.*

■

¶ 16.   Berger argues that the trial court erred in refusing to impose statutory interest on Tierney's arrears. She contends that the wording of the statute referencing arrears required the trial court to order them. The trial court, in its oral decision, said:   "All right. Now I am not going to assess any interest on what's happened to this point. I will not do that. That's just an extra penalty." While the trial court viewed interest as a penalty, a conclusion we do not necessarily agree with, in fact there were no actual "arrears"; therefore, the trial court's refusal to order interest on

monies owed when it reinstated the previously-vacated family court commissioner's order was proper, albeit for a different reason than that stated by the trial court.

¶ 17. WISCONSIN STAT. § 767.511(6), titled "[i]nterest on arrearage," reads, in pertinent part: "A party ordered to pay child support under this section shall pay simple interest at the rate of 1% per month on any amount in arrears that is equal to or greater than the amount of child support due in one month." (Some capitalization omitted.) As noted, Tierney was under no child support order for a period of time because of the trial court's decision to vacate the child support order set by the family court commissioner. This had the effect of wiping out the order entered by the family court commissioner requiring Tierney to pay child support and placed the parties in the same position they had been in for the last eight years; *i.e.*, a hold-open on child support. Consequently, no arrears existed. Indeed, the literal reading of the statute requiring "simple interest at the rate 1% per month on any amount in arrears that is equal to or greater than the amount of child support due in one month" would not be applicable because there was no "child support due in one month."

¶ 18. While not directly on point, the case of *Lyman v. Lyman*, 2011 WI App 24, 331 Wis. 2d 650, 795 N.W.2d 475, supports this conclusion. In *Lyman*, the trial court determined that no interest was due on the settlement proceeds that Scot Lyman received after successfully suing his former employer on a breach of contract suit. *See id.*, ¶¶ 5, 8, 27–28. The parties had entered into a stipulation concerning child support. *Id.*, ¶ 3. After Scot Lyman settled his wrongful termination suit for over three million dollars, Sally Lyman sought child support from the settlement amount. *See id.*, ¶ 10. The trial court awarded her $220,000, but did not

order any interest. *Id.*, ¶ 11. This court affirmed the trial court's conclusion that the child support award did not create an arrearage under WIS. STAT. § 767.511(6). *Id.*, ¶ 28. Similarly, the trial court's decision here, to order lump-sum child support for the period of time that no legal support order was in effect, did not create an arrearage and the trial court correctly refused to order interest on the amount.

3. *The trial court properly exercised its discretion in determining the start date for the child support order.*

¶ 19. Berger argues that the trial court erred when it set the effective date of its order. We disagree. Without citing any support for her argument, Berger contends that the trial court's setting the child support order to begin on the date of the trial court's decision was error. The trial court conducted a hearing *de novo.* The commonly accepted meaning of a *de novo* hearing is "[a] new hearing of a matter, conducted as if the original hearing had not taken place." *See* BLACK'S LAW DICTIONARY 738 (8th ed. 2004). A *de novo* hearing requires a fresh look at the issues, including the taking of testimony (unless the parties enter into stipulations as to what the testimony would be). The hearing is literally a new hearing, not merely a review of whatever record may have been made before the family court commissioner.

¶ 20. Here, the trial court basically adopted the family court commissioner's order concerning child support by ordering a lump-sum child support order for the amount that would have been paid had the family court commissioner's child support order been in effect until the trial court's decision. "Child support determi-

695

nations are within the trial court's discretion and will not be reversed absent an erroneous exercise of discretion." *Welter v. Welter*, 2006 WI App 54, ¶ 4, 289 Wis. 2d 857, 711 N.W.2d 705. The trial court properly exercised its discretion when it commenced the child support order for June 10, 2009.

## B. Tierney's Appeal

### 1. Evidence of a substantial change of circumstances was overwhelming.

■

¶ 21. Tierney submits that the trial court erred when it modified child support because there had been no change in circumstances. We disagree.

¶ 22. WISCONSIN STAT. § 767.59 sets out the procedure to be used when a party seeks to modify child support. Generally, a revision can occur only upon a finding of a substantial change in circumstances. *See* WIS. STAT. § 767.59(1f). Section 767.59(1f)(b)2. creates a rebuttable presumption that a substantial change of circumstances is presumed after the expiration of thirty-three months from the entry of the last child support order "[u]nless the amount of child support is expressed in the judgment or order as a percentage of parental income." Tierney concedes that the last child support order was entered over thirty-three months ago. He argues, however, that Berger's motion seeking the setting of a child support order mentioned only two bases for the change—his move to Illinois and the increased expenses of the children. He contends that his move did not result in a substantial change of circumstances and any increase in his daughters' expenses was borne equally by him. Further, he points out that there was no change in the placement and he

696

continued to have the children for approximately seventy-seven overnights a year. Thus, he contends that no substantial change of circumstances has been proven.

¶ 23. The trial court stated that it had found a substantial change in circumstances in its decision: "[T]here has been a substantial change in circumstances. I found that." The trial court concluded that Tierney's move to Illinois was a substantial change in circumstances because it "took [Tierney] out of these girls' lives basically." The move also required one of the children to drive to Illinois. The trial court was also suspicious of Tierney's claim that periods of placement with his children resulted in greater travel expenses: "You have travel expenses that you may or may not be using to get back up from Illinois, [to] get [your daughter] down there." In making its child support award, the trial court observed that the children were getting more expensive. The trial court was also unimpressed by Tierney's stated reason for paying expenses rather than child support— that he wanted to stay involved in his children's lives. The trial court told Tierney that he could pay child support and still be an attentive father and stay in touch with his children by e-mail. The trial court also was disbelieving of Tierney's claim that he spent $1600 per month on his daughters. The trial court remarked: "Then this exhibit that he admitted saying I spent average of $1,600 a [month] on some things. That is a fiction. It is not proven up."

¶ 24. Tierney also argues that because he was also paying fifty percent of the increased child expenses, that no real substantial change in circumstances had occurred. However, he fails to consider that the children's everyday expenses were being borne by Berger alone. This included larger living quarters for

the two children, bigger electric and utility bills, and increased expenses for incidentals, food costs and clothing.[5]

¶ 25. In sum, the trial court was presented with the following facts: the last child support order had been entered over thirty-three months previously; that order held open child support, and in fact there had been a hold-open on child support for nine years; the children, now teenagers, had far greater expenses, and one of the children was estranged from the father; the father had moved to Illinois, making the placement order for the children less likely to occur; both parties

---

[5] We find some of the arguments in Tierney's brief to be disingenuous, if not totally misleading. Two examples: Tierney wrote, "Rebecca submitted no evidence to inform the court about her household income, or lack thereof." First, Tierney could have availed himself of discovery procedures to secure that information had he wanted to. Second, Berger and her husband both testified to their financial situation. Tierney also wrote that:

> The judge weighed the foregoing factors in favor of a deviation, stating that it would be unfair to John to apply the child support guidelines and that the children's needs did not justify a higher amount. Nonetheless, he then ordered John to pay 25 percent of his gross base pay without any reduction for being a high-income payer and he further ordered John to pay 25 percent of all bonuses and commissions without giving him any credit for being a high-income payer.

These statements are not true. The trial court found a deviation only as to the bonus income and never stated that "the children's needs did not justify a higher amount." Further, Tierney was to be treated as a high-income payer after he paid the "arrears."

Counsel is reminded that SCR 20:3.3(a)(1) requires candor to the tribunal.

had remarried and had two more children; the father was making substantially more money now than at the time of the divorce; and the mother was not now employed outside the home and her husband was also unemployed. Any one of the reasons just listed would probably have qualified for a substantial change in circumstances. Collectively, the evidence of a substantial change in circumstances was overwhelming. For these reasons, the trial court properly found a substantial change in circumstances.

2. *The trial court's orders were consistent with its findings.*

¶ 26. Tierney claims that "[t]he court's analysis was scattered, inconsistent and inconclusive on the issue of whether there had been a substantial change in circumstances justifying a termination of the parties' nine-year hold open."

¶ 27. Tierney goes on to argue that even if there was a substantial change in circumstances, the trial court erroneously exercised its discretion because the child support order was in excess of the guideline amounts. Tierney is wrong on both counts.

¶ 28. Much has been said concerning the trial court's finding that a substantial change in circumstances occurred, and we have already determined that the trial court's finding that a substantial change in circumstances occurred is not clearly erroneous. We need not address this issue again.

¶ 29. Tierney claims that the child support order is in excess of the guidelines and submits that the trial court "ordered an *upward* child support deviation." In fact, the trial court order was in keeping with the child support guidelines as the support order was set at

twenty-five percent of Tierney's base income ($1734.37 per month). Further, the trial court did not require Tierney to pay an additional twenty-five percent of his bonus as child support until such time as the lump-sum "arrears" were paid in full. Also, as the trial court noted, once that occurs, Tierney will be eligible for the high-income payer discount: "From this day forward it will be 25 percent of his known income as indicated by his base salary. And then after those arrears are paid up, it will also be high income [payer], a percentage of that bonus." This was not an upward child support deviation. Without the trial court's deviation on the bonus income, Tierney would have been paying twenty-five percent on his base salary, twenty-five percent of his bonus income and, at the same time, paying off the lump-sum "arrears."

   3.   *The trial court's child support orders did not violate* WIS. STAT. *§§ 767.511 and 767.553.*

¶ 30.   Tierney argues that the trial court erred when it ordered both a fixed sum for child support and a percentage order on the bonus income. Tierney relies on a sentence found in WIS. STAT. § 767.511(1)(a), providing: "The support amount must be expressed as a fixed sum unless the parties have stipulated to expressing the amount as a percentage of the payer's income and the requirements under s. 767.34(2)(am)1. to 3. are satisfied." Inasmuch as there was no stipulation, Tierney claims the only viable order capturing the bonus income is pursuant to WIS. STAT. § 767.553, titled "[a]nnual adjustments in support orders."

¶ 31.   After examining the issue, we conclude that the trial court's percentage order on unknown future amounts of money which will qualify as gross income

700

was acceptable. We observe that setting child support as a percentage order on unknown future amounts of money is relatively commonplace in practice, but we were unable to find a case which actually authorizes it.[6] We have therefore extrapolated from the logic found in *Hefty v. Hefty*, 172 Wis. 2d 124, 493 N.W.2d 33 (1992), which permits percentage orders for anticipated bonuses in maintenance cases.

¶ 32. In *Hefty*, Thomas Hefty was ordered to pay maintenance of $5000 a month plus twenty percent of the gross of any bonus in excess of his base salary. *Id.* at 129. Thomas Hefty objected, arguing that the court had no authority to award maintenance based on a percentage of his future income. *See id.* at 129–30. The supreme court observed that percentage maintenance awards in " 'very unusual circumstances' " were approved in the earlier case of *Poindexter v. Poindexter*, 142 Wis. 2d 517, 528–29, 419 N.W.2d 223 (1988). *See Hefty*, 172 Wis. 2d at 130–31 (citing *Poindexter*, 142 Wis. 2d at 529). Finding that future bonuses which cannot be predicted fall within the category of " 'very unusual circumstances,' " the supreme court affirmed the trial court. *Id.* at 132 (citation omitted).

¶ 33.   Here, the situation parallels *Hefty*. While the statute suggests that child support orders be expressed as a fixed sum, it does not completely prohibit

---

[6] *But cf. Hefty v. Hefty*, 172 Wis. 2d 124, 129–30, 493 N.W.2d 33 (1992) (trial court awarded Jean Hefty $1500 per month plus ten percent of the gross of any bonus in excess of base salary for child support, and also ordered $5000 per month plus twenty percent of the gross of any bonus in excess of his base salary for maintenance, but Thomas Hefty only appealed *maintenance* award on basis that court did not have authority to order it based on a percentage of future income).

percentage orders; it permits them when the parties agree. We are satisfied that permitting percentage orders on unknown future bonus income is another exception to the preferred method of having percentage orders expressed as a fixed sum. Moreover, as noted in *Hefty*, "[t]o rule otherwise would force the [trial] court to guess the amount of his future bonus income." *See id.* In addition, the *Hefty* court observed that: " 'Because the costs associated with court intervention are substantial and because the parties involved are often financially distressed, the use of a percentage award and its automatic adjustment is preferable.' " *Id.* at 132–33 (citing *Poindexter*, 142 Wis. 2d at 545 (Callow, J., concurring)). Thus, we affirm the trial court's percentage order on Tierney's future bonuses. For the reasons stated, the order is affirmed.

*By the Court.*—Order affirmed.